[No. H011640. Sixth Dist. Dec. 21, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
MYRON DELIN TODD, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts V and VI.

**COUNSEL**

Maribeth Halloran, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Martin S. Kay and Ronald S. Matthias, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**COTTLE, P. J.—**

### I.

### INTRODUCTION

Applying the governing rule in *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948], we hold in the published portion of this opinion that defendant Myron Delin Todd is entitled to the benefit of a 1992 amendment to the drug trafficking near school yards enhancement set forth in Health and Safety Code section 11353.6, subdivision (b).[1] The ameliorative portion of the amendment, which limits the reach of the enhancement to specified drug violations within 1,000 feet of a school to those which take place in a "public area" or "business establishment where minors are legally permitted to conduct business," (§ 11353.6, subd. (g)) applies to defendant because the statutory change became effective before defendant's jury trial, and "the Legislature did not preclude its effect to pending cases." (*People* v. *Figueroa* (1993) 20 Cal.App.4th 65, 68 [24 Cal.Rptr.2d 368].) The extent of relief to which defendant is entitled in this particular case is discussed in the unpublished portion of this opinion.

### II.

### PROCEDURAL HISTORY

A jury convicted defendant of possession of heroin (§ 11350). It also convicted him of sale of cocaine base (§ 11352, subd. (a)) by an adult within 1,000 feet of an elementary school (§ 11353.6, subd. (b)). Defendant then admitted having served a prior prison term within the meaning of Penal Code section 667.5, subdivision (b). He was sentenced to 10 years in state prison, including a 4-year sentence for the section 11353.6 enhancement.

---

[1] All further statutory references are to the Health and Safety Code unless otherwise specified.

### III.

### FACTUAL SUMMARY

On September 28, 1992, undercover Officer Franco purchased rock cocaine at apartment No. 1 of 778 Vine Street in San Jose.

At approximately 4 p.m. on September 29, 1992, Franco returned to the same apartment, this time accompanied by undercover Officer Cooke; the two officers hoped to negotiate a second "controlled buy." When they knocked at the front door of the apartment, the door was opened by Kathy Gordon, who acknowledged that she recognized Franco from the earlier purchase.

The officers accepted Gordon's invitation to enter the apartment. Once inside, Franco and Cooke each asked Gordon for "a fifty," which referred to $50's worth of crack cocaine. In response, Gordon indicated that "[some]-body else would be providing the crack cocaine." She said she "would have to call upstairs" and "he would bring it down." Each officer then handed Gordon $50 from city funds provided by the narcotics unit. After taking the money, Gordon told Franco and Cooke "to wait where [they] were." Gordon then walked out the front door, closing it behind her.

Within a minute, Gordon returned with defendant. At this point, Gordon was holding nothing, while defendant was holding money which was "spread out" in a manner which "looked like he could be thumbing through it, counting it." He asked "something to the effect of: Is it yours, or is it for you?" When the officers responded affirmatively, defendant and Gordon went into the apartment bathroom and closed the door. In less than a minute, they emerged from the bathroom.

Gordon then handed several loose cocaine rocks[2] to each officer while defendant continued to hold the money the officers had given to Gordon. When the officers were leaving apartment No. 1, defendant identified himself as "Red" and suggested that Franco and Cooke "[c]ome back again."

The apartment complex at 778 Vine is located 912 feet from the property line of the Washington Elementary School, and it was stipulated that, at the time of the drug transaction which ensued, "school or school activities were in progress at [that] school, within the meaning of section 11353.6 of the Health and Safety Code . . . ."

On October 13, 1992, San Jose police conducted an authorized search of apartment No. 4 at 778 Vine Street. Apartment No. 4 is upstairs from

---

[2]The rocks tested positive for cocaine base and weighed .45 and .49 grams.

apartment No. 1. In order to get from apartment No. 1 to apartment No. 4, one walks on a narrow walkway along a fence to a stairway that goes up to a balcony or platform where the doorways to the upstairs apartments are located.

During their search of apartment No. 4, police located heroin, as well as a scale, cash, and indicia of defendant's occupancy of the premises. The heroin was recovered from a safe, the key to which was found in defendant's possession. Following his arrest, defendant told police, "Don't know why I'm being arrested; I only had a little heroin in my safe that I snort myself."

## IV.

### RETROACTIVITY OF THE AMENDMENT TO SECTION 11353.6

Defendant went to trial on July 21, 1993, for crimes committed on September 29 and October 13 of 1992. A four-year enhancement was applied to his section 11352, subdivision (a) conviction under section 11353.6, subdivision (b). On September 29, 1992, the date the violation of section 11352, subdivision (a) was committed, the enhancement statute required only that the violation take place "within 1,000 feet" of a school. By the time defendant's case was tried, the revised statute, effective January 1, 1992, had expanded to apply to a wider range of narcotic offenses, had added a requirement that school be in session or that minors be using the facility when the offenses occurred, and had limited its reach to those specified drug violations which took place within 1,000 feet of a school in a "public area" or in a "business establishment where minors are legally permitted to conduct business." The new subdivision (g) of section 11353.6 added a requirement to the enhancement statute by explaining that " '[w]ith-in 1,000 feet of a public or private elementary, vocational, junior high, or high school,' means *any public area or business establishment where minors are legally permitted to conduct business* which is located within 1,000 feet of any public or private elementary, vocational, junior high, or high school." (Amended by Stats. 1992, ch. 989, § 1, italics added.)

 Defendant contends the 1992 amendment to section 11353.6, subdivision (b), particularly the portion emphasized above, applies to him. This contention has merit.

The court in *People* v. *Figueroa, supra,* 20 Cal.App.4th 65, 68–70, reviewed relevant governing precedent in reaching its conclusion that a defendant whose case was on appeal when the 1992 amendment of section 11353.6, subdivision (b) became effective was entitled to the benefit of that portion of

the amendment which added the requirement that school be in session or that minors be using the facility when the offense takes place within 1,000 feet of the school.

■ We adopt the relevant portion of *Figueroa*'s review of the law in reaching our conclusion that defendant is entitled to the benefit of the "public area" requirement set forth in the amendment to the enhancement statute: "The governing rule was announced by our Supreme Court nearly 30 years ago in *In re Estrada* (1965) 63 Cal.2d 740, 748 [48 Cal.Rptr. 172, 408 P.2d 948]: '[W]here the amendatory statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed.' In *People v. Rossi* (1976) 18 Cal.3d 295, 304 [134 Cal.Rptr. 64, 555 P.2d 1313], the court applied the rule to the repeal of a criminal statute. The court stated '. . . it is "the universal common-law rule that when the Legislature repeals a criminal statute or otherwise removes the State's condemnation from conduct that was formerly deemed criminal, this action requires the dismissal of a pending criminal proceeding charging such conduct. The rule applies to any . . . proceeding which, at the time of the supervening legislation, has not yet reached final disposition in the highest court authorized to review it." ' (Quoting from *Bell v. Maryland* (1964) 378 U.S. 226, 230 [12 L.Ed.2d 822, 826, 84 S.Ct. 1814].) It is assumed that when the Legislature amends a statute so as to lessen the punishment, '. . . it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act.' (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 301 [279 Cal.Rptr. 592, 807 P.2d 434].)" (*People v. Figueroa, supra*, 20 Cal.App.4th at pp. 69-70.) ■ Absent a savings clause, defendant is entitled to the benefit of a change in the law which occurred while he was awaiting trial. (See *People v. Babylon* (1985) 39 Cal.3d 719, 722 [216 Cal.Rptr. 123, 702 P.2d 205]; *People v. Vasquez* (1992) 7 Cal.App.4th 763 [9 Cal.Rptr.2d 255] [absent savings clause, defendant entitled to such benefit of a change in the law occurring during pendency of an appeal].)

The amendment in this case benefits defendant since the enhancement can no longer be imposed for his offense within 1,000 feet of a school unless it is proven that the violation occurred in a public area or in a business establishment where minors are legally permitted to conduct business. Although the 1992 amendment to the enhancement also expanded the list of the underlying offenses subject to the enhancement and therefore, in part, increased punishment for criminal conduct, we agree with the court in *Figueroa* that "[b]ased on *Estrada* and *Tapia*, . . . [defendant] must be given the benefit of the amended statute." (20 Cal.App.4th at p. 71.) As the

court in *Figueroa* explained, "The *Estrada* principle is based on presumed legislative intent. In almost every case, its application has been to amendments that reduce punishment or make an act formerly criminal, not a crime at all. The circumstances of an amendatory change to a penalty statute are covered, however, in *Tapia* v. *Superior Court* [1991] 53 Cal.3d [282,] 301 [279 Cal.Rptr. 592, 807 P.2d 434]. In that case the Supreme Court discussed amendments to the death penalty law adopted in 1992 by Proposition 115. One of the changes added an intent element to each of two of the death penalty special circumstances, Penal Code section 190.2, subdivision (a)(11) and (a)(12). The court held that the new requirement applied to defendants whose crimes were committed before the change if their conviction was not yet final. Reduced to a nondeath penalty context, this is our case." (20 Cal.App.4th at pp. 70-71.)

## V., VI.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## VII.

### DISPOSITION

The enhancement imposed pursuant to Health and Safety Code section 11353.6 is reversed. In all other respects, the judgment is affirmed.

Wunderlich, J., and Mihara, J., concurred.

---

*See footnote, *ante*, at page 1724.