[No. B100137. Second Dist., Div. Three. Aug. 26, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
JONATHAN MARZET, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III B., C., and D.

**COUNSEL**

Michael L. Becker for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Marc E. Turchin and Brad D. Levenson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KITCHING, J.—**

I

Health and Safety Code section 11353.6 provides that a sentence enhancement may be imposed when a specified narcotics offense, or conspiracy to commit the offense, is found to have occurred in a "public area" within 1,000 feet of a public or private elementary, vocational or secondary school during hours the school is open for classes or school-related programs. In the published portion of this opinion, we hold that when the underlying offense is a conspiracy to commit a narcotics offense, the enhancement may be applied when overt acts taken in furtherance of the conspiracy occur in a public area. This is so even though the narcotics are being held inside a private residence and the actual narcotics sale or transaction is to occur within the private residence.

In addition, we determine the question whether the conspiracy, or an act in furtherance of the conspiracy, was committed in a public area is one of fact which must be submitted to the jury. However, in the present case, the trial court's failure to instruct the jury it must find beyond a reasonable doubt the conspiracy occurred in a public area does not require reversal of the enhancement. A review of the record, taken as a whole, indicates there is no reasonable probability that a result more favorable to Marzet would have occurred had the jury been properly instructed.

In the unpublished portion of this opinion we conclude the trial court properly denied Jonathan Marzet's request to relieve his retained counsel

and properly denied his motion for a mistrial. However, Marzet's contention he is entitled to additional presentence custody credits is well taken and the judgment will be modified accordingly. In all other respects, we affirm the judgment.

## II

### FACTUAL AND PROCEDURAL BACKGROUND

Viewed in accordance with the usual rules of appellate review (*People* v. *Johnson* (1993) 6 Cal.4th 1, 38 [23 Cal.Rptr.2d 593, 859 P.2d 673]), the evidence established that on April 3, 1995, undercover Department of Justice Narcotics Enforcement Agent Fulgencio Vasquez telephoned a man named Victor Perea to inquire about purchasing some heroin. Perea told Vasquez that he had access to a source who could supply him with large quantities of the drug, then agreed to meet Vasquez at a Denny's restaurant that evening to discuss the matter.

Perea arrived at the restaurant accompanied by another man, Felipe Velasquez. Perea indicated he had access to five to seven kilos of black tar heroin, each of which would sell for approximately $80,000. After further discussion, Vasquez agreed to purchase two kilos of heroin.

Perea telephoned Vasquez on a number of occasions between April 6, 1995, and April 12, 1995. On the 12th, Perea instructed Vasquez to meet him and his associate at an El Pollo Loco restaurant in Los Angeles. At that time, Perea and his companion, Jaime Arroyos, gave Vasquez a sample of heroin.

Following additional negotiations, Vasquez met Perea and Velasquez at a McDonald's restaurant parking lot on April 14, 1995. Vasquez noticed that Arroyos was standing across the street. Velasquez told Vasquez to wait at the parking lot, then got into a car and drove off. Approximately 45 minutes later, Velasquez returned to the parking lot. Behind him, driving a van, was Marzet. Perea approached Vasquez and told him that Marzet was the heroin "source." Marzet then approached Vasquez and told him he was there to see the money. Vasquez directed Marzet to a satchel in his car which contained 18 packets of $100 bills. Each packet was worth $10,000. Marzet reached inside the satchel, retrieved a packet of bills and counted them. After thoroughly examining three or four $100 bills, Marzet told Vasquez that he was going to make a telephone call and have two kilos of heroin delivered to a residence on 28th Street. However, due to unforeseen circumstances, no sale took place that day.

After more telephone calls and negotiations, Vasquez met Perea, Carlos Martinez, Arroyos and Marzet in the parking lot of a Los Angeles Church's

Chicken restaurant on April 20, 1995. When Vasquez informed the men he was interested in purchasing one kilo of heroin, Marzet and Martinez agreed to supply the drug, then left the parking lot to contact their source, a man named "Pablo" Chavez. Vasquez was later paged and directed to drive to a house at 827 West 51st Street.

Vasquez drove to West 51st Street and parked his car approximately 40 yards east of the house numbered 827. On the other side of 51st Street and approximately 20 yards from the house is the 52nd Street School, an intermediate school for children in their early teens. When Vasquez first arrived at the house, he saw children boarding three school buses parked on the street near the school. Cars in the area were double parked and it appeared the children had just been let out of their classes.

Just east of the spot where Vasquez had parked his car, he saw Arroyos standing on a street corner. Vasquez walked over to Arroyos who told Vasquez that "they had the kilo of heroin." Arroyos then pointed toward Chavez and another man, who were standing just east of 827 West 51st Street. Vasquez saw Martinez and Albert Figueroa standing near a van parked on 51st Street just west of the house. As Vasquez walked toward the men, Chavez approached Vasquez and asked him if he was "ready." When Vasquez responded in the affirmative, Chavez pointed toward the house at 827 West 51st Street and told Vasquez the kilo of heroin was "in there." Vasquez told Chavez he would go to his car and get the money. As he turned to walk away from Chavez, Vasquez "gave the arrest signal" to other officers in the area.

In response to Vasquez's signal, a "raid van" pulled up in front of the house. When Chavez began to run toward Vasquez, Vasquez pulled his gun and aimed it at Chavez until other officers could detain Chavez. A search of Chavez's jacket pocket revealed a loaded .380-caliber semiautomatic pistol. From inside the house at 827 West 51st Street, officers recovered two packages, each containing one thousand grams of black tar heroin.

A jury convicted Marzet of conspiring to possess for sale and to sell more than one kilogram of heroin (Pen. Code, § 182, subd. (a)(1); Health & Saf. Code, §§ 11351, 11352, 11370.4, subd. (a)(1)),[1] committed within one thousand feet of a school (§ 11353.6, subd. (b)), and during which a principal was armed with a firearm (Pen. Code, § 12022, subd. (a)(1)); and offering to sell more than one kilogram of heroin (§§ 11352, subd. (a), 11370.4, subd. (a)(1)), during which a principal was armed with a firearm (Pen. Code,

[1] All further statutory references are to the Health and Safety Code unless otherwise specified.

§ 12022, subd. (a)(1)). The trial court sentenced Marzet to nine years in prison. He timely filed a notice of appeal.

## III

### DISCUSSION

**A.** *The Trial Court Properly Imposed the Four-year Health and Safety Code Section 11353.6 "School" Enhancement.*

#### 1. *The Statute.*

Section 11353.6 provides in relevant part: "(a) This section shall be known, and may be cited, as the Juvenile Drug Trafficking and Schoolyard Act . . . . [¶] (b) Any person 18 years of age or over who is convicted of a violation of [certain narcotics offenses], or of a conspiracy to commit . . . those offenses, where the violation takes place upon the grounds of, or within 1,000 feet of, a public or private elementary, vocational, junior high, or high school during hours that the school is open for classes or school-related programs, or at any time when minors are using the facility where the offense occurs, shall receive an additional punishment of 3, 4, or 5 years at the court's discretion. [¶] . . . [¶] (g) 'Within 1,000 feet of a public or private elementary, vocational, junior high, or high school' means any public area or business establishment where minors are legally permitted to conduct business which is located within 1,000 feet of any public or private elementary, vocational, junior high, or high school."

#### 2. *A Conspiracy to Commit a Narcotics Offense Occurs in a "Public Area" When an Overt Act in Furtherance of the Conspiracy Occurs in a Public Place.*

After finding Marzet guilty of conspiring to possess and sell heroin, the jury found true the allegation that, "1) The commission of the . . . offense took place upon the grounds of, and within 1,000 feet of 52nd Street School; and 2) The school was open for classes and school related programs; and 3) Minors were using the school facility; and 4) The Defendant Jonathan Marzet [was] over the age of 18 years . . . pursuant to [Health and Safety Code] Section 11353.6(b) . . . ."

At sentencing, the trial court imposed a four-year enhancement pursuant to section 11353.6. In imposing the enhancement, the court commented, "[T]he conspirators chose to engage in activity near a school. The dope was inside the house, but much of this action took place out in the street. The

arrest[s] were outside in the street, and a co-defendant had a gun outside [in] the street. School children were getting out. People who are going to engage in drug conspiracies, they are going to have to pay the price when they choose to engage near a school."

■ Marzet urges section 11353.3 is intended only to address the possession and sale of drugs in "public" areas near schools. He contends the enhancement cannot be applied to him because there is no question the heroin was being kept inside a private residence and it is clear the drug transaction was to take place within the confines of the private house. We disagree.

Prior to 1993, section 11353.6 "created a drug-free zone around schools by providing for an enhancement of 3, 4, or 5 years upon conviction of drug trafficking 'within 1,000 feet' of a school. The enhancement applied even if the sale took place in the bedroom of a private residence at a time when the nearby school was closed for summer vacation." (*People* v. *Jimenez* (1995) 33 Cal.App.4th 54, 58 [39 Cal.Rptr.2d 12].) However, "[i]n 1993, the Legislature expanded the list of underlying offenses subject to the enhancement but limited the circumstances under which the enhancement could apply." Subdivision (b) of the section was amended to provide the enhancement is applicable only if the underlying offenses take place " 'during hours that the school is open for classes or school-related programs, or at any time when minors are using the facility where the offense occurs.' " (*Ibid.*) In addition, the Legislature added subdivision (g) which provides: " 'Within 1,000 feet of a public or private . . . school' means any *public area* or business establishment where minors are legally permitted to conduct business which is located within 1,000 feet of any public or private . . . school." (Italics added.)

As the *Jimenez* court recognized, the 1993 amendments were not enacted because the Legislature "suddenly became soft on crime or because it lost interest in 'shielding . . . children from the evils of the drug trade.' " (*People* v. *Jimenez*, *supra*, 33 Cal.App.4th at p. 59.) Instead, the amendments simply "represent a change in focus away from attempting to create a 'drug-free zone' around schools, focusing instead on preventing the sale of drugs to students on their way to and from school and, equally important, protecting them from exposure to drug dealers and drug buyers so they will not be influenced to emulate the conduct of either. [¶] . . . [¶] [In addition,] section 11353.6 subdivision (g) recognizes drug transactions carried out in *private or in places where minors are not lawfully present*, such as bars, nightclubs and adult bookstores, do not expose minors to drug trafficking to the same degree as transactions carried out in places children are likely to

congregate before, during and after school such as streets, sidewalks, and bus stops." (*Ibid.*, fn. omitted; cf. *People* v. *Todd* (1994) 30 Cal.App.4th 1724, 1729 [36 Cal.Rptr.2d 774] [section 11353.6 enhancements do not apply to drug sales which occur entirely within the confines of a private residence].) Consistent with the purpose of the statute, the *Jimenez* court held the "term 'public area' should be construed to include publicly owned locations such as streets, sidewalks and bus stops as well as those portions of private property which are readily accessible to the public." (33 Cal.App.4th at p. 60.) The court found that driveways to private residences could be "public areas" for purposes of the statute since they are places which students freely pass on their way to and from school, are generally exposed to public view, and are generally accessible to persons making deliveries or other calls. (*People* v. *Jimenez, supra,* 33 Cal.App.4th at p. 60.)

In the present case, it is clear the narcotics were being held within the residence at 827 West 51st Street, a place generally not considered a "public area" for purposes of section 11353.6. (See *People* v. *Todd, supra,* 30 Cal.App.4th at p. 1729.) It also appears the actual drug sale or transaction was to occur within the house. However, Marzet was found guilty, not of the actual narcotics sale, but of *conspiring* to possess for sale and to sell heroin. ▉ A conspiracy to possess for sale or sell a narcotic is "an agreement entered into between two or more persons with the specific intent to agree to [possess for sale or sell narcotics] and with the further specific intent to commit [such offenses], followed by an overt act committed in this state by one or more of the [conspirators] for the purpose of accomplishing the object of the agreement." (CALJIC No. 6.10.)

▉ Here, the evidence establishes that Vasquez and conspirators were outside and in front of the residence as they made their final negotiations for the sale of the heroin. As they made these arrangements, children who had just been let out of their classes were boarding nearby school buses and getting into cars parked on the street near the house. Vasquez had left the money for the sale in his car, which was parked across the street from the school. When Vasquez gave other officers the signal to arrest the conspirators, the altercation between police and the conspirators took place, not inside the house, but outside and in front of the residence, within 20 yards of a school where children were present. After the arrests took place, the police found a .380-caliber semiautomatic pistol on one of the conspirators.

The actions taken by conspirators in furtherance of the conspiracy which occurred outside and in front of the residence at 827 West 51st Street exposed school-age children to the dangerous and potentially influential conduct of drug dealers and buyers as surely as if the children had witnessed

the transaction itself. The purpose of section 11353.6 includes, not only the prevention of the sale of drugs to students on their way to and from school but, of equal importance, the protection of school-age children from exposure to drug sellers, drug buyers, and the hazards presented by drug trafficking. (See *People* v. *Jimenez, supra,* 33 Cal.App.4th at p. 59.) In keeping with the intent and purpose of the statute, we conclude when the underlying offense is a conspiracy to commit a narcotics offense, a section 11353.6 enhancement may apply when overt acts taken in furtherance of the conspiracy occur in a public area within 1,000 feet of a school. The fact that the narcotics are being held and the transaction is to occur in a private residence is not dispositive.

3. *The Trial Court's Error in Failing to Instruct the Jury the Conspiracy or Overt Acts in Furtherance of the Conspiracy to Possess for Sale or Sell Narcotics Must Have Occurred in a "Public Area" Was Harmless.*

With regard to the section 11353.6 allegation, the trial court instructed the jury that "[a]ny person 18 years of age or over, who conspires to violate Section 11351 or 11352 of the Health and Safety Code, where the violation takes place upon the grounds of, or within 1,000 feet of, a public or private . . . school during hours that the school is open for classes or school related programs, or at any time when minors are using the facility where the offense occurs is guilty of violating Health and Safety Code Section 11353.6(b). [¶] It is alleged in Count 1 that at the time of the commission of the crime [of] which [Marzet] is accused, he violated Health and Safety Code Section 11353.6(b). [¶] If you find the defendant guilty of the crime charged in Count 1 [conspiracy to possess for sale or sell heroin], you must determine whether this allegation is true. [¶] The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true. . . ." The instruction did not inform the jury it must find the offense occurred in a "public area."

■ Marzet contends the trial court erred in failing to instruct the jury it must find the conspiracy or acts in furtherance of the conspiracy occurred in a "public area." He urges the error mandates reversal because such a finding is a "necessary element" of the enhancement.

In *People* v. *Jimenez* the court recognized that, with the addition of subdivision (g) to section 11353.6, "the burden is on the People to prove not only that the offense took place within 1,000 feet of a school but that it took place in a *public area* or a business establishment where minors are legally permitted to conduct business." (*People* v. *Jimenez, supra,* 33 Cal.App.4th at

pp. 60-61, italics added.) Such a factual finding is "essential to the enhancement." (*Id.* at p. 61.)

■ A trial court "must instruct even without request on the general principles of law relevant to and governing the case. [Citation.] That obligation includes instructions on all of the elements of a charged offense. [Citation.]" (*People* v. *Cummings* (1993) 4 Cal.4th 1233, 1311 [18 Cal.Rptr.2d 796, 850 P.2d 1].) "This rule applies to the 'elements' of an 'enhancement.'" (*People* v. *Winslow* (1995) 40 Cal.App.4th 680, 688 [46 Cal.Rptr.2d 901], fn. omitted.)

In *People* v. *Wims* (1995) 10 Cal.4th 293, 314 [41 Cal.Rptr.2d 241, 895 P.2d 77], our Supreme Court determined that when instructions regarding enhancements are wrongly omitted, the error warrants reversal " 'only if, "after examination of the entire cause, including the evidence, the court [concludes] . . . that the error . . . resulted in a miscarriage of justice" . . . .' " The *Wims* court stated the test for harmlessness articulated in *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243] is the applicable standard. Accordingly, a true finding of an enhancement may be overturned only if " ' "it is reasonably probable that a result more favorable to [Marzet] would have been reached in the absence of the error.' [Citation.] 'In determining whether there was prejudice, the entire record should be examined, including the facts and the instructions, the arguments of counsel, any communications from the jury during deliberations, and the entire verdict.' [Citation.]" (*People* v. *Wims, supra,* 10 Cal.4th at p. 315.)

■ Applying this standard to the present case, we conclude the trial court's error in failing to instruct the jury the alleged offense must have occurred in a public area was harmless. It is undisputed that final negotiations for the heroin sale occurred in front of the house and on a public street. Had the question been submitted to the jury, it could not have come to any conclusion other than that these areas are "public" within the meaning of section 11353.6. Under these circumstances, there is no reasonable probability that, had the trial court adequately instructed the jury on this element of the enhancement, a result more favorable to Marzet would have occurred.

B.-D.*

. . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 329.

# IV

## DISPOSITION

The judgment is modified to reflect presentence custody credit for 275 days actually served and 136 days of good time/work time, for a total of 411 days. In all other respects, the judgment is affirmed.

Klein, P. J., and Aldrich, J., concurred.