[No. H015880. Sixth Dist. Apr. 10, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
CURTIS RONALD TOWNSEND, Defendant and Appellant.

## COUNSEL

Robert Spertus, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias and Richard Rochman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ELIA, J.**—At issue in this appeal is the scope of Health and Safety Code section 11353.6, subdivision (b), which creates a sentence enhancement applicable to certain narcotics offenses committed within 1,000 feet of a school.[1] In its instructions to the jury, the trial court altered the language of this provision. Appellant Curtis Ronald Townsend contends that the court's instruction gave the jury the erroneous impression that section 11353.6(b) is applicable to a person who sells controlled substances outside the school boundary while the school is closed but minors are on the school grounds. The People maintain that the enhancement is triggered whenever minors are present at the school. We agree with the People's interpretation. Although the trial court improperly changed the language of the statute in defining the enhancement for the jury, no prejudice resulted. We further find no unconstitutional vagueness in the statute. Accordingly, we will affirm the judgment.

### Background

Between 5:55 and 6:00 on a Thursday evening in April 1995, appellant sold an undercover officer a piece of crack cocaine for $20. The exchange took place eight to ten feet from the fence that bordered Horace Mann

---

[1] All further statutory references are to the Health and Safety Code. References to section 11353.6(b) are to section 11353.6, subdivision (b).

Elementary School in San Jose. The officer saw several children between 10 and 15 years old playing basketball on the school grounds.

Milly Powell, the principal at Horace Mann at that time, testified that the school was open for classes between 9:05 a.m. and 3:05 p.m. After that a "homework center" was open for the students until 4 p.m. Between 6:30 a.m. and 6 p.m. a private organization operated a day care center for children of parents who lived in the school district. The day care center was considered part of the school and was administered through the school district. After 6 p.m. there were no authorized activities on the school grounds except for adult classes in "English as a Second Language" (ESL). Children were "not supposed to" use the school grounds after 6 p.m., but Ms. Powell was aware that some students nevertheless went there to play basketball.

Appellant and two codefendants were charged with selling and offering to sell cocaine base (§ 11352, subd. (a)) and possession of cocaine base for sale (§ 11351.5). Attached to each count was an allegation that the crime took place within 1,000 feet of Horace Mann Elementary School "during hours that the school was open for classes and school-related programs, and at the time when minors were using the facilities where the offense occurred, within the meaning of section 11353.6 of the Health and Safety Code." After a jury trial, all three defendants were convicted as charged.

*Discussion*

1. *Jury Instruction*

Section 11353.6, the Juvenile Drug Trafficking and Schoolyard Act, creates a sentence enhancement for any adult who is convicted of certain narcotics offenses, including the sale of crack cocaine, "where the violation takes place upon the grounds of, or within 1,000 feet of, a public or private elementary, vocational, junior high, or high school during hours that the school is open for classes or school-related programs, or at any time when minors are using the facility where the offense occurs . . . ." (§ 11353.6(b).)[2]

In instructing the jury, the trial court substituted "when the offense occurs" for "where the offense occurs" in the last clause of subdivision (b) quoted above. Defense counsel objected, but the prosecution successfully argued that the word "where" was a drafting error.

---

[2]The term "within 1,000 feet of" is defined in section 11353.6 subdivision (g) as "any public area or business establishment where minors are legally permitted to conduct business which is located within 1,000 feet of any public or private elementary, vocational, junior high, or high school." Any references to "off-campus" in this opinion pertain to this protected zone.

Appellant argues that the court's substitution of "when" for "where" permitted the jury to convict him on a legally impermissible theory: that an off-campus sale of drugs will trigger the application of section 11353.6(b) if minors are using the school facility. According to appellant, when school is closed the enhancement may be imposed only if *both* the minors and the offender are *at the school facility* when the offense takes place, and only if the minors are authorized to be on the premises. This interpretation cannot withstand scrutiny.

In construing section 11353.6, our objective is to "ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224]; *People v. Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr.2d 278, 856 P.2d 1134].) In approaching this task, a court must begin with the statutory language, giving the words used their plain and commonsense meaning. (*People v. Valladoli* (1996) 13 Cal.4th 590, 597 [54 Cal.Rptr.2d 695, 918 P.2d 999].) If there is no ambiguity or uncertainty, the Legislature is presumed to have meant what it said, and there is no need to resort to extrinsic indicia of legislative intent, such as legislative history. (*People v. Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232]; *People v. Hendrix* (1996) 16 Cal.4th 508, 512 [66 Cal.Rptr.2d 431, 941 P.2d 64].)

On the other hand, ". . . language that appears unambiguous on its face may be shown to have a latent ambiguity." (*Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1371 [64 Cal.Rptr.2d 741].) In such a case, a court may turn to customary rules of statutory construction, the " 'wider historical circumstances,' " or legislative history for guidance, keeping in mind the " 'consequences that will flow from a particular interpretation.' " (*People v. Cruz* (1996) 13 Cal.4th 764, 782-783 [55 Cal.Rptr.2d 117, 919 P.2d 731].) It is not always preferable to rely on the literal meaning of the words used. " '[I]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' [Citations.] . . . Thus, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' " (*People v. Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420]; *People v. Ledesma* (1997) 16 Cal.4th 90, 95 [65 Cal.Rptr.2d 610, 939 P.2d 1310].)

The manifest purpose of section 11353.6 is to prevent drug trafficking with schoolchildren and to protect students from exposure to drug transactions and the hazards they present. (*People v. Williams* (1992) 10 Cal.App.4th 1389, 1394 [13 Cal.Rptr.2d 379]; *People v. Jimenez* (1995) 33

Cal.App.4th 54, 60 [39 Cal.Rptr.2d 12]; *People* v. *Marzet* (1997) 57 Cal.App.4th 329, 338 [67 Cal.Rptr.2d 83].) " 'Whether or not a child is involved in or otherwise present during any particular sale of narcotics within one thousand feet of a school, subjecting the seller to enhanced penalties reasonably may be expected to deter the seller and other illicit dealers from conducting their operations near school property in the future. . . . It is difficult to imagine a more rational way of keeping drug traffickers out of areas where children are more likely to come into contact with them than to subject them to a risk of stiffer penalties for doing business near school property.' " (*People* v. *Williams, supra,* 10 Cal.App.4th at p. 1395, quoting *United States* v. *Nieves* (S.D.N.Y. 1985) 608 F.Supp. 1147, 1149-1150, italics omitted.)

In 1992 the Legislature amended section 11353.6, effective January 1, ·1993. The 1992 amendment increased the number of offenses subject to the enhancement and narrowed the circumstances in which it applied. Instead of maintaining a 24-hour all-inclusive protected zone around schools, the Legislature added subdivision (g), which limited the reach of the statute to "any *public* area or business establishment where minors are legally permitted to conduct business." (Italics added.) The amendment also specified that the 1,000-foot zone was protected "during hours that the school is open for classes or school-related programs, or *at any time when minors are using the facility where the offense occurs.*" (Stats. 1992, ch. 989, § 1, p. 4661, italics added.) It is this addition, particularly the portion italicized above, that is at issue ·in this case.

Appellant contends the clause "where the offense occurs" refers to the school facility, and therefore the offense must take place on campus for the enhancement to apply. This construction ignores the preceding language creating the 1,000-foot zone. There is no basis either in the statutory language or in the legislative history for inferring that the Legislature intended to retain the phrase "within 1,000 feet" only during the hours a school is open, and to relinquish that protection when school is closed but students are "using the facility." Nor is there any indication that the students' presence on campus must be authorized for the offender's conduct to warrant increased punishment. To the extent that the amended portion of subdivision (b) creates ambiguity in its scope, appellant's proposed construction is unreasonable. Consequently, we do not apply the rule invoked by appellant, that ambiguous penal statutes are construed in favor of defendants. That rule is applicable only when "two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner is impracticable." (*People* v. *Jones* (1988) 46 Cal.3d 585, 599 [250 Cal.Rptr. 635, 758 P.2d 1165].) Courts will

not favor a defendant's interpretation if it would lead to results "that are contrary to legislative intent or that fail to prevent the harm that is identified in the statute or that override common sense and create palpable absurdities." (*People* v. *Davis* (1985) 166 Cal.App.3d 760, 766 [212 Cal.Rptr. 673]; *People* v. *Pieters, supra,* 52 Cal.3d 894, 899; see also *People* v. *Jimenez* (1992) 11 Cal.App.4th 1611, 1626 [15 Cal.Rptr.2d 268] [defendant's construction must be rejected if unreasonable, absurd or contrary to the legislative intent].)

■ In our view, the section 11353.6 enhancement applies whenever students are on campus—whether school is open or closed—and the offense takes place either on campus *or* in a public area within 1,000 feet of the school boundary. The clause "where the offense occurs" contributes little except to clarify that the school in use by minors must be the same one as the school at or near the location of the offense. When the court advised the jury that the enhancement allegation could be found true if "the minors were using the facility when the offense occurred," it was merely restating the provision for application of the enhancement "at any time when" minors are using the facility. (§ 11353.6(b).) Thus, the court's substitution of "when" for "where" in the clause "where the offense occurs" was of no significance.

It is evident in the challenged instruction that the court assumed that "the facility" was the school. Neither party contests this assumption, and we agree that the intended referent of "the facility" is the school. We recognize, however, that there are other plausible constructions of this language. For example, a broader interpretation of the term "facility" would extend the protection during nonschool hours beyond the school boundary to the entire 1,000-foot zone. An expanded reading of "facility" to the entire surrounding area, however, becomes awkward when minors are considered to be "*using* the facility*.*" Alternatively, it could be argued, as does the dissent, that "facility" refers to any specific point within the 1,000-foot area, so as to subject an offender to the enhancement if both the offender and the minors are at the same public location within that zone. But we believe the interpretation we have adopted to be most consistent with the Legislature's purpose to accord protection to children in the entire zone during hours the school is open, and to ensure protection of any children using the school facility even when school is closed.

The legislative history surrounding the 1992 amendment is consistent with our interpretation. The Senate Judiciary Committee described the amendment as specifying "that the enhancement may be invoked for violation when the school is open or *whenever minors are using the facility.*" The Senate Rules Committee described the applicable period as the hours "that

the school is open for classes or school[-]related programs or at any time when minors are using the *facilities*." There is no evidence of any legislative effort to define the word "facility" to mean anything other than the facility identified in the preceding part of the sentence—that is, the school.

In this respect section 11353.6(b) is identical to section 11353.1, subdivision (a)(2), and section 11380.1, subdivision (a)(2), which also create sentence enhancements for drug offenses near schools.[3] These provisions were enacted in 1990, prior to the amendment of section 11353.6. By comparison, section 11353.1, subdivision (a)(1), and section 11380.1, subdivision (a)(1), do not contain the disputed clause, "where the offense occurs."[4] Instead, these latter provisions call for increased punishment when the offense occurs on the grounds of any one of a number of specified facilities, "*during hours in which the facility is open for business, classes, or school-related programs, or at any time when minors are using the facility.*" (Italics added.) The defining sentence refers first to the hours "the facility" is open and then to the time "when minors are using the facility." It was unnecessary to use the language "where the offense occurs" to distinguish the facility already identified by implication in the preceding part of the sentence.[5]

As noted earlier, the Legislature did not need to use this qualifying language in section 11353.6 to distinguish the school from any other facility

---

[3]Section 11353.1, subdivision (a)(2), enhances the sentence imposed for a violation of section 11353 if "the offense involved heroin, cocaine, cocaine base, or any analog of these substances and occurred upon, or within 1,000 feet of, the grounds of any public or private elementary, vocational, junior high, or high school, *during hours that the school is open for classes or school-related programs, or at any time when minors are using the facility where the offense occurs* . . . ." (Italics added.)

Section 11380.1, subdivision (a)(2), provides for a similar enhancement if "the offense involved phencyclidine (PCP), methamphetamine, lysergic acid diethylamide (LSD), or any analog of these substances and occurred upon, or within 1,000 feet of, the grounds of any public or private elementary, vocational, junior high school, or high school, *during hours that the school is open for classes or school-related programs, or at any time when minors are using the facility where the offense occurs* . . . ." (Italics added.)

[4]Subdivision (a)(1) of section 11353.1 provides: "If the [section 11353] offense involved heroin, cocaine, cocaine base, or any analog of these substances and occurred upon the grounds of, or within, a church or synagogue, a playground, a public or private youth center, a child day care facility, or a public swimming pool, *during hours in which the facility is open for business, classes, or school-related programs, or at any time when minors are using the facility* . . . ." (Italics added.) Section 11380.1, subdivision (a)(1), provides for enhancement if "the offense involved phencyclidine (PCP), methamphetamine, lysergic acid diethylamide (LSD), or any analog of these substances and occurred upon the grounds of, or within, a church or synagogue, a playground, a public or private youth center, a child day care facility, or a public swimming pool, during hours in which the facility is open for business, classes, or school-related programs, *or at any time when minors are using the facility* . . . ." (Italics added.)

[5]Section 11353.5, which prohibits certain drug activities at a number of specified facilities, does include the language "at any time when minors are using the facility where the offense occurs." In that statute, however, the clause is preceded by an express reference to "those

because only one type of facility—a school—is the subject of the enhancement. The statute would have been clear enough without the words "where the offense occurs." Appellant, as well as the dissent, suggests that we cannot presume the Legislature would have added unnecessary language, but must "try to give effect to every phrase and paragraph, leaving no part of the statute useless or deprived of meaning." (*People* v. *Jackson* (1985) 37 Cal.3d 826, 832 [210 Cal.Rptr. 623, 694 P.2d 736]; *People* v. *Bow* (1993) 13 Cal.App.4th 1551, 1557 [17 Cal.Rptr.2d 94].) ■ But the avoidance of surplusage, while an important principle of statutory construction, is nonetheless subordinate to the overriding purpose of effectuating legislative intent. "Rules such as those directing courts to avoid interpreting legislative enactments as surplusage are mere guides and will not be used to defeat legislative intent. [Citations.] As we have already stressed, the fundamental goal of statutory interpretation is to ascertain and carry out the intent of the Legislature." (*People* v. *Cruz, supra*, 13 Cal.4th 764, 782.)

■ According to our dissenting colleague, the focus of the 1992 amendment was on *proximity* between the offender and any children who might be in the 1,000-foot zone when school is closed. He cites *People* v. *Jimenez, supra*, 33 Cal.App.4th 54, for the rationale that the statute is designed to prevent exposure of minors to drug trafficking when they are going to or from school or simply congregating in the surrounding area. The court in *Jimenez*, however, did not assume that school is closed when children are walking to and from school, as the dissent apparently does. Instead, the *Jimenez* court appears to have assumed the opposite, by contrasting the tendency of large numbers of students to congregate off campus "before and after school" with the "substantially" lower risk of exposure when "school is *closed* or abandoned. *The amendment to section 11353.6, subdivision (b) recognizes these facts by focusing the enhancement for off-campus drug offenses on the hours the school is open for classes or school-related programs.*" (*Id.* at p. 59, italics added.)[6]

Even if the construction we adopt does not encompass drug offenses committed in proximity to children when the nearby campus is closed and deserted, we nevertheless feel constrained to follow the intent as expressed in the statute, rather than what we think the Legislature should

facilities." The qualifying language "where the offense occurs" is necessary to identify which of "those facilities" must be in use by minors at the time of the offense.

[6]Students walking to and from classes are not necessarily outside the protection of section 11353.6(b) under our interpretation of the word "facility." Horace Mann Elementary School, for example, is open for day care from 6:30 a.m. until 6 p.m. Consequently, children walking either to school before the bell rings or home after being dismissed will generally be covered by the language protecting them "during hours that the school is open for classes or school-related programs."

have intended. ■ "The role of the judiciary is not to rewrite legislation to satisfy the court's, rather than the Legislature's, sense of balance and order. . . ." (*People* v. *Carter* (1997) 58 Cal.App.4th 128, 134 [67 Cal.Rptr.2d 845].) ■ Thus, to paraphrase *Carter*, the apparent purpose underlying section 11353.6 may well be served by imposing a sentence enhancement on offenders who engage in drug dealing on a Saturday outside the school grounds when no one is on the playground but children are on the same street as the drug dealer. But "the question before us is not whether such substitution would be a reasonable legislative act but whether this is in fact what the Legislature did." (58 Cal.App.4th at p. 134.)[7]

We thus conclude that the trial court's instruction, if erroneous, did not permit the jury to convict on a legally insufficient theory. Though there is no evidence that the word "where" was a drafting error, as the prosecution contended below, the substitution of "when" in the jury instructions was harmless beyond a reasonable doubt. (See *People* v. *Harris* (1994) 9 Cal.4th 407, 424 [37 Cal.Rptr.2d 200, 886 P.2d 1193]; *People* v. *Davison* (1995) 32 Cal.App.4th 206, 215 [38 Cal.Rptr.2d 438].)

2. *Vagueness*

■ Appellant next contends that if the court correctly defined the enhancement when it replaced "where" with "when," then the statute must be declared void for vagueness. We cannot agree. First, we believe the Legislature intended to use "where," not "when," so we do not uphold the judgment on the ground that a "drafting error" occurred, as argued by the prosecution and accepted by the trial court. Furthermore, to the extent that appellant maintains that the statute is unclear even as written, he has not met the criteria for finding unconstitutional vagueness.

■ Due process requires fair notice of what conduct is prohibited. A statute must be definite enough to provide a standard of conduct for its citizens and guidance for the police to avoid arbitrary and discriminatory enforcement. (*Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 269 [198 Cal.Rptr. 145, 673 P.2d 732]; *People* v. *Superior Court* (*Caswell*) (1988) 46 Cal.3d 381, 389 [250 Cal.Rptr. 515, 758 P.2d 1046].) "Void for vagueness

---

[7]Indeed, the alternative construction by the dissent only invites further interpretive difficulties. It does not explain how far away children must be on a sidewalk to constitute "using the facility [i.e., the sidewalk] where the offense occurs." If children are standing at a bus stop—a "facility" under the dissent's view of the statute—is the offender then exempt from the enhancement if he conducts his drug deal on the sidewalk a few feet away? If a street corner is a facility, does the offender escape the enhancement if children are watching the transaction from a different corner at the same intersection? If the legislative goal was to deter drug crimes in proximity to minors, the language of this statute does not promote that goal.

simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." (*United States* v. *National Dairy Corp.* (1963) 372 U.S. 29, 32-33 [83 S.Ct. 594, 598, 9 L.Ed.2d 561].)

█ Section 11353.6 does not suffer from unconstitutional vagueness. A statute is not vague if, as here, any reasonable and practical construction can be given to its language. Reasonable certainty is all that is required. (*People* v. *Victor* (1965) 62 Cal.2d 280, 300 [42 Cal.Rptr. 199, 398 P.2d 391]; *People* ex rel. *Gallo* v. *Acuna* (1997) 14 Cal.4th 1090, 1117 [60 Cal.Rptr.2d 277, 929 P.2d 596]; *Boyce Motor Lines* v. *United States* (1952) 342 U.S. 337, 340 [72 S.Ct. 329, 330-331, 96 L.Ed. 367].) Even where it contains somewhat imprecise language, secondary sources such as legislative history may clarify statutory terms sufficiently to meet the constitutional requirement of fair notice. (*People* v. *McCaughan* (1957) 49 Cal.2d 409, 414 [317 P.2d 974]; *People* v. *Heitzman* (1994) 9 Cal.4th 189, 200 [37 Cal.Rptr.2d 236, 886 P.2d 1229]; *People* v. *Mitchell* (1994) 30 Cal.App.4th 783, 799 [36 Cal.Rptr.2d 150].) "This analytical framework is consistent with the notion that we 'require citizens to apprise themselves not only of statutory language, but also of legislative history, subsequent judicial construction, and underlying legislative purposes.' " (*People* v. *Heitzman, supra,* 9 Cal.4th at p. 200, quoting *Walker* v. *Superior Court* (1988) 47 Cal.3d 112, 143 [253 Cal.Rptr. 1, 763 P.2d 852].)

Even if, as we have already discussed, the reference to "the facility where the offense occurs" may be susceptible of more than one reasonable construction, ambiguity alone does not mean a statute is vague.[8] "A statute may contain a serious ambiguity; this will not in itself make the statute vague. New statutes, criminal as well as civil, frequently contain ambiguities. If that alone made them unconstitutionally vague, it would be difficult to enact new statutes. The objection to vague statutes is that they invite arbitrary and discriminatory enforcement by those who administer the statute. A statute that contains one or several ambiguities that can be dispelled at a stroke by interpretation is not open to that objection and therefore is not vague in the constitutional sense." (*Kucharek* v. *Hanaway* (7th Cir. 1990) 902 F.2d 513, 519.)

Our Supreme Court has expressed a similar view: "Many, probably most, statutes are ambiguous in some respects and instances invariably arise under

---

[8]"A statute is vague if its meaning is imprecise or indefinite: Its meaning does not control the decision of the person applying it. A statute is ambiguous, on the other hand, if it can have two or more meanings." (Slawson, *Legislative History and the Need to Bring Statutory Interpretation Under the Rule of Law* (1992) 44 Stan.L.Rev. 383, 421.)

which the application of statutory language may be unclear. So long as a statute does not threaten to infringe on the exercise of First Amendment or other constitutional rights, however, such ambiguities, even if numerous, do not justify the invalidation of a statute on its face." (*Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1201 [246 Cal.Rptr. 629, 753 P.2d 585]; *People* v. *Kelly* (1992) 1 Cal.4th 495, 533-534 [3 Cal.Rptr.2d 677, 822 P.2d 385].) We conclude, therefore, that section 11353.6(b) is not impermissibly vague.

### 3. *Sufficiency of the Evidence*

Appellant finally contends that even if the instruction did not permit conviction on a *legally* insufficient theory, it is reasonably probable that the verdict was based on a *factually* insufficient theory. According to appellant, there was insufficient evidence that at the time of the offense either the school was open for school-related programs or the minors playing basketball were authorized to be there. As we noted earlier, however, the statute does not require that the minors' presence be authorized. In amending the statute, the Legislature preserved protection for minors whenever they are on campus, even when school is closed. Because an *authorized* use is not an element of section 11353.6, we reject his argument that the evidence failed to establish that the minors had permission to play basketball at the school facility while it was closed. (Cf. *Roberts* v. *City of Palmdale* (1993) 5 Cal.4th 363, 372 [20 Cal.Rptr.2d 330, 853 P.2d 496] [courts should not "add language or imply exceptions to statutes passed by the Legislature"].) Even if there was insufficient evidence that the transaction occurred before day care ended at 6 p.m.,[9] there was uncontradicted testimony that minors were playing basketball on the campus.[10] Accordingly, whether or not the school was "open for classes or school-related programs," the alternative criterion of the enhancement—that minors be using the facility—was clearly met.

### *Disposition*

The judgment is affirmed.

Premo, Acting P. J., concurred.

---

[9]Officer Raymond testified at trial that he approached appellant to make a purchase about 5:52 or 5:53 p.m. The transaction occurred "right around between 5:55 and six o'clock." Officer Hall, who had been observing appellant's activity, believed the initial contact between appellant and Officer Raymond was about 5:58 p.m., but he was not relying on his independent knowledge of that fact.

[10]The People also point to the school principal's testimony that ESL classes were held at the school facility on Thursday nights. We decline to base our conclusion on this fact, however, because it was not established that the facility was open for this purpose at the time of the offense, nor that these adult ESL classes were "school-related" within the meaning of section 11353.6(b).

**WUNDERLICH, J.**—I respectfully dissent.

Before 1993, Health and Safety Code section 11353.6[1] created an absolute "drug-free zone" around schools. The enhancement applied to offenses committed on or within 1,000 feet of a school, even if they occurred "in the bedroom of a private residence at a time when the nearby school was closed for summer vacation." (*People* v. *Jimenez* (1995) 33 Cal.App.4th 54, 58 [39 Cal.Rptr.2d 12].) Then, in 1993, the Legislature amended the statute by expanding the list of applicable offenses, limiting the circumstances in which the enhancement applied, and excluding offenses committed in private areas and businesses where minors are not legally permitted to be.

These changes, as the court in *People* v. *Jimenez, supra*, 33 Cal.App.4th 54 later explained, were not made because the Legislature "suddenly became soft on crime or because it lost interest in 'shielding . . . children from the evils of the drug trade.' " (*Id.* at p. 59.) Rather, the amendments "represent a change in focus away from attempting to create a 'drug-free zone' around schools, focusing instead on preventing the sale of drugs to students on their way to and from school and, equally important, protecting them from *exposure* to drug dealers and drug buyers so they will not be influenced to emulate the conduct of either."[2] (*Ibid.*, italics added.) The changes recognized that "drug transactions carried out in private or in places where minors are not lawfully present, such as bars, nightclubs and adult bookstores, do not expose minors to drug trafficking to the same degree as transactions carried out in places children are likely to congregate before, during and after school such as streets, sidewalks, and bus stops." (*Ibid.*, fn. omitted.)

Section 11353.6 now provides, among other things, that when school is closed, the enhancement applies to offenses committed on or off campus "any time when minors are using the facility where the offense occurs." (§ 11353.6, subd. (b).) My colleagues and I disagree over the meaning of the quoted language.

Drawing inferences from related statutes, my colleagues conclude that "facility" refers *only* to school grounds. In their view, when school is closed—for example, in the mornings or evenings before and after classes, on weekends and holidays, or during the summer vacation, the statute protects minors in any nearby bus stop, fast-food restaurant, parking lot, or similar public place *only* if another minor happens to be on campus. If the

---

[1]Further statutory references are to the Health and Safety Code.

[2]As I read the statutory changes, the Legislature maintained the "drug-free zone" approach when school is open, for the enhancement applies to offenses committed in the defined areas regardless of whether any school children are around. However, the Legislature did change the approach when schools are closed, focusing on exposure.

campus is empty or even completely locked up, then dealers need not fear additional punishment for selling drugs in nearby areas no matter how many children may be present.

I question whether the Legislature intended to make application of the enhancement depend on the *coincidental* presence of a child on campus, especially when the statute is designed to prevent exposure to drug trafficking when minors are going to and from school or simply congregating in the surrounding area. (See *People* v. *Jimenez*, *supra*, 33 Cal.App.4th at pp. 58, 60; *People* v. *Williams* (1992) 10 Cal.App.4th 1389, 1395 [13 Cal.Rptr.2d 379].)

As I explain more fully below, I read "facility" to mean school grounds *or* public areas within 1,000 feet of a school. Thus, when school is closed, the enhancement applies *anytime* a minor and dealer are in the same place. I believe this interpretation is more consistent with the legislative focus on preventing exposure and better serves the purpose of the statute.

Turning to section 11353.6, I note that before the word "facility" is used, the statute lists the places where the underlying offense must occur: "upon the grounds of, or within 1,000 feet of, a public or private elementary, vocational, junior high, or high school." (§ 11353.6, subd. (b).) In section 11353.6, subdivision (g), the Legislature specifically defines "[w]ithin 1,000 feet of a public or private elementary, vocational, junior high, or high school" to mean "any public area or business establishment where minors are legally permitted to conduct business which is located within 1,000 feet of any public or private elementary, vocational, junior high, or high school."

After specifying that the offense must take place on school grounds or in public areas or businesses within 1,000 feet of school, the statute makes the enhancement applicable only if the offense occurs (1) during school hours or (2) "any time when minors are using the *facility* where the offense occurs." (§ 11353.6, subd. (b), italics added.)

When used to denote a place or a thing, "facility" commonly means "something that promotes the ease of any action, operation, transaction, or course of conduct"; "something (as a hospital, machinery, plumbing) that is built, constructed, installed, or established to perform some particular function or to serve or facilitate some particular end." (See Webster's New Internat. Dict. (3d ed. 1981) pp. 812-813.) The word "facility" in the statute refers to something, and, given the breadth of the term, I conclude that it refers back to *any* of the previously specified places: school grounds, public areas, or businesses open to minors. My colleagues concede that this is a

"plausible" interpretation of "facility." And, at oral argument, the Attorney General conceded that "facility" could reasonably refer to more than school grounds.

Furthermore, if the Legislature intended for "facility" to mean only *one* of the specified places—school grounds—it seems more likely it would have said "school grounds" instead of "facility." However, because it used this different, broader word, I infer a legislative intent to encompass more than just school grounds. (Cf. *Zavala* v. *Board of Trustees* (1993) 16 Cal.App.4th 1755, 1762 [20 Cal.Rptr.2d 768] [use of different words in adjoining, contemporaneous subdivisions creates compelling inference the Legislature intended different meaning].)

This brings us to the phrase "where the offense occurs," which modifies "facility." Given my interpretation of "facility," the statute reads, in effect, any time when minors are using the school grounds, the public area, or the business where the offense occurs. The plain meaning of this language is clear: For the enhancement to apply, a minor must be in or at the same place the dealer commits the offense, whether it be the school ground or a nearby public area or business.

The plain meaning of the language reflects and promotes the Legislature's intent to prevent exposure to drug trafficking because it focuses on *proximity* between dealers and school children when school is closed. The Legislature could reasonably conclude that punishing such proximity is, in theory, an effective way to prevent exposure to drug trafficking after school. Moreover, in theory, it protects minors *whenever* they are in the same place where the drug trafficking is occurring. Thus, in my view, punishing proximity is a far more effective way to prevent exposure to off-campus drug trafficking than making the enhancement applicable *only* when a minor happens to be somewhere on campus.[3]

Furthermore, my interpretation of the language in question assumes the Legislature intended "where the offense occurs" to serve some meaningful purpose. My colleagues say it is little more than surplusage. However, in construing statutes, we generally try to give effect to all phrases and avoid interpretations that render the Legislature's words meaningless. (See *People* v. *Bryant* (1992) 10 Cal.App.4th 1584, 1600 [13 Cal.Rptr.2d 601]; *City of San Jose* v. *Superior Court* (1993) 5 Cal.4th 47, 55 [19 Cal.Rptr.2d 73, 850

---

[3]It may also make it simpler to apply the enhancement. For example, when an offense occurs in a mini-market near a school, it would be easy to show that there was a minor in the store at the time, whereas more difficult to show there was a minor using the campus at that moment.

P.2d 621]; *Estate of MacDonald* (1990) 51 Cal.3d 262, 270 [272 Cal.Rptr. 153, 794 P.2d 911].)

My colleagues quote excerpts from two Senate committee reports, whose authors appear to have equated the words "facility" or "facilities" with school grounds. My colleagues can then find no legislative effort "to define the word 'facility' to mean anything other than the facility identified in the preceding part of the sentence—that is, the school." (Maj. opn., *ante*, at p. 1398.) As I point out above, however, the preceding part of the statutory sentence identifies more than one facility: school grounds, public areas, and businesses open to minors.

My colleagues also cite a number of related enhancement statutes. However, I find the statutes more supportive of my interpretation of section 11353.6.

Section 11353.1, subdivision (a)(1), and section 11380.1, subdivision (a)(1), identify numerous places where the offense must occur for the enhancement to apply: churches, synagogues, playgrounds, public and private youth centers, child day-care centers, and public swimming pools. But unlike section 11353.6, the statutes do not include public areas and businesses within 1,000 feet of these places. The statutes then make the enhancements applicable to offenses that occur "during hours in which *the facility* is open" or "any time when minors are using *the facility* . . . ." (Italics added.) The phrase "where the offense occurs" does not modify "facility."

In these statutes, the word "facility" is not ambiguous. It can only refer back to one of the places listed. In this respect, they support my view that "facility" in section 11353.6 refers back to *any* one of specified places: school grounds or public places or businesses within 1,000 feet. These statutes further support my interpretation because they too focus on proximity and apply only if the dealer and minor are at the *same* church, playground, youth center, etc. Finally, these statutes do not need the modifying phrase "where the offense occurs" because there is no possible ambiguity concerning which facility the minors must be using when the offense occurs. One cannot reasonably read the statutes to apply to a drug sale in a synagogue when a minor is using a swimming pool someplace else.

Section 11353.1, subdivision (a)(2), and section 11380.1, subdivision (a)(2), are different from their respective subdivision (a)(1)'s discussed

above and essentially identical to section 11353.6: They all apply to trans-actions on school grounds *or* public places within 1,000 feet,[4] and they all contain the phrase "where the offense occurs" to modify "facility." More-over, their use of "facility" is subject to the same ambiguity my colleagues and I recognize in section 11353.6. In all three statutes, the phrase "any time when minors are using the facility" could refer either to when minors are using either the school or to when they are using nearby public areas or businesses. The modifying phrase "where the offense occurs" resolves this ambiguity by saying the minor and dealer must be in the same place. Doing so maintains the legislative focus on *proximity* between dealers and schoolchildren.[5]

Given my analysis, I disagree with my colleagues' conclusion that the trial court's substitution of "when the offense occurs" for the statutory language "where the offense occurs" was harmless error. The error permitted the jury to find the enhancement allegation true under a factual theory that is legally untenable: commission of a drug sale on a facility that schoolchildren were not using at the time. Since we cannot tell the factual basis upon which the jury relied, the enhancement cannot stand. (See *People* v. *Guiton* (1993) 4 Cal.4th 1116, 1128-1129 [17 Cal.Rptr.2d 365, 847 P.2d 45].)

This is also true because if we assume that both of our interpretations are reasonable, defendant is entitled to benefit from the rule that we ordinarily resolve doubts and ambiguities concerning the meaning of a penal statute in favor of the defendant. (*People* v. *Simon* (1995) 9 Cal.4th 493, 517 [37 Cal.Rptr.2d 278, 886 P.2d 1271].) Moreover, my colleagues and I arrive at different interpretations, which, when applied to the facts of this case, lead to opposite conclusions concerning the applicability of the enhancement to defendant. Under these circumstances, I consider the statute too vague to have provided defendant with constitutionally adequate notice concerning the consequences of selling drugs near the school when it was closed. For this reason, I doubt my colleagues may properly apply their interpretation to defendant without violating his due process rights. (See *People* ex rel. *Gallo* v. *Acuna* (1997) 14 Cal.4th 1090, 1115 [60 Cal.Rptr.2d 277, 929 P.2d 596].)

In sum, my interpretation of the statute and that of my colleagues reflect two ways of protecting children from exposure to drug traffickers. I must

---

[4] The statutory definition of "within 1,000 feet etc." is the same in all three statutes. (§§ 11353.1, subd. (e)(5), 11353.6, subd. (g), 11380.1, subd. (e).)

[5] Section 11353.5 is a hybrid, in that it does not apply to offenses that occur within 1,000 feet of specified places but does apply "any time when minors are using the facility *where the offense occurs*." (Italics added.) In this statute, "where the offense occurs" does simply clarify the obvious: that the facility in use by the minor must be the one at which the offense occurs. However, even this statute supports my view that the dealer and minor must be in the same place when the offense occurs and thus is consistent with my view that the Legislature intended to protect school children by preventing *proximity* to drug dealers.

acknowledge that neither provides protection in all situations when school is closed. My colleagues' interpretation fails to protect children who are in the public areas near school when there is no other child on campus. My interpretation fails to protect the children, who, as in this case, are in a school yard close to a dealer on a nearby sidewalk. These limitations, however, arise from the statutory language we have construed. In my view, "any time when minors are using the facility where the offense occurs" cannot reasonably be interpreted in a way that provides comprehensive protection. For this reason, I urge the Legislature to revisit section 11353.6 (and related statutes) and amend the statute so that it eliminates the deficiencies discussed above.

Appellant's petition for review by the Supreme Court was denied July 15, 1998.