**UNITED STATES of America,**

v.

**Angel NIEVES, et al., Defendants.**

**85 Crim. 244 (EW).**

United States District Court, S.D. New York.

May 13, 1985.

Rudolph W. Giuliani, U.S. Atty., for the S.D.N.Y., New York City, for the U.S.; Maria T. Galeno, New York City, of counsel.

Lawrence Kessler, Hempstead, N.Y., for defendant Angel Nieves.

## OPINION

EDWARD WEINFELD, District Judge.

Angel Nieves and Edwin Pagan are named as defendants in a two count indictment charging them with (1) conspiracy to distribute and to possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 812, 841, and (2) distribution of heroin within one thousand feet of Public School 28 in the Bronx, New York, in violation of 21 U.S.C. §§ 812, 841, 845a. Section 845a, cited in Count Two, was enacted on October 12, 1984. It provides for enhanced penalties upon conviction for selling narcotics within one thousand feet of a public or private elementary or secondary school. In the event of a conviction under this new statute, the term of imprisonment would be up to twice that, and the term of parole at least twice that, authorized for unlawful narcotics sales generally. In the event of a second or subsequent conviction under this section, the statute provides for the imposition of a mandatory term at least three times longer than that provided for repeat offenders generally, up to a maximum term of life imprisonment, and there would be no eligibility for parole before a prescribed minimum sentence of at least three years had been served. In view of these enhanced penalties, defendant Nieves moves pursuant to Fed.R.Crim.P. 12 to dismiss the second, or "schoolhouse," count upon the grounds that section 845a violates the due process and equal protection guarantees of the Fifth Amendment to the Constitution. Defendant Pagan joins in the motion.

## DUE PROCESS OF LAW

The defendant claims that section 845a establishes an irrebuttable presumption that all narcotics sales within one thousand feet of school property have a special detrimental effect upon schoolchildren, an effect the statute was specifically designed to prevent, and thus are punishable by enhanced penalties. However, he argues, since the transaction alleged under Count Two occurred at four p.m. two blocks away from school property and the complaint and discovery materials provided by the Government make no reference to the presence of any school-age children during the transaction, the presumption is wholly irrational in the context of this case and to subject defendant to enhanced penalties should he be convicted would not serve the purpose of the statute. Nieves concludes that because he is not permitted to offer evidence that his alleged sale of heroin had no effect upon children, thereby rebutting the presumption and avoiding the enhanced penalties, section 845a may deprive him of his liberty without due process of law if he is convicted and sentenced under Count Two.

 The premise of defendant's due process claim, that the irrebuttable presumption established by section 845a is not rationally related to a legitimate governmental interest in the context of this case, is without merit. Defendant does not dispute the legitimacy of the congressional purpose behind section 845a, namely, to protect school-age children from the dangers posed by the sale of narcotics, or that the relationship between this purpose and the challenged presumption need be anything more than rational. Yet under this liberal standard, section 845a clearly satisfies the requirements of due process. Indeed, the nature of the governmental interest involved here and the likely impact of the presumption and enhanced penalties upon prospective drug sellers suggest that the statute could withstand scrutiny under a more stringent standard. The irrebuttable presumption established by section 845a is easily distinguishable from those held invalid on due process grounds in cases such as *Cleveland Board of Education v. LaFleur*,[1] *United States Department of Agriculture v. Murry*,[2] and *Stanley v. Illinois*.[3] The presumption that narcotics sales in the vicinity of an elementary or secondary school endanger the students and thus should be subject to stiffer penalties is substantially related to Congress's interest in shielding these children from the evils of the drug trade. Whether or not a child is involved in or otherwise present during any particular sale of narcotics within one thousand feet of a school, subjecting the seller to enhanced penalties reasonably may be expected to deter the seller and other illicit dealers from conducting their operations near school property in the future. In such areas, where children congregate in large numbers before, during, and after school sessions, they are readily subject to the illicit activities of those who ply narcotics to the victims of drug abuse and addiction. The sale and distribution of drugs to youngsters for their use may subject them to the evils of addiction, a hazard to them not only physically and psychologically but financially, with the prospect that their need for drugs, once they are addicted, will lead them into a life of crime to obtain funds to support their habit. They may be drawn into drug rings as participants themselves, aiding the sale and distribution of narcotics to others, including their schoolmates. Indeed, judicial notice may be taken of the destructive results of drug addiction, the source of which Congress clearly intended to keep out of the easy reach of school-age children.[4] It is difficult to imagine a more

1. 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974).

2. 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973).

3. 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).

4. *See* 130 Cong.Rec. S559 (daily ed. Jan. 31, 1984) (remarks of Sen. Hawkins).

rational way of keeping drug traffickers out of areas where children are more likely to come into contact with them than to subject them to a risk of stiffer penalties for doing business near school property. By focusing on the particular transaction for which he is charged, defendant fails to consider the long term effect of section 845a on the health and welfare of school-children in general.

## EQUAL PROTECTION OF THE LAWS

■ Defendant further asserts that section 845a denies him the equal protection of the laws guaranteed by the Fifth Amendment [5] because the statute's enhanced penalties have a greater impact upon drug traffickers who reside in inner city areas, where population density and the number of schools are higher, than upon those who reside elsewhere. Defendant proceeds on the assumption that, because members of racial minority groups represent a higher percentage of the population in these areas than in suburban and rural areas, section 845a has a disproportionate impact upon a "suspect class." As a result, he argues, the statute is subject to strict scrutiny under the equal protection guarantee, in which case it must be invalidated as impermissibly overbroad in view of the governmental interest it is intended to advance.

Even assuming for purposes of this motion that section 845a has a racially disparate impact—defendant offers no evidence, statistical or otherwise, to support his assumption that the statute's enhanced penalties burden one race more than another—that fact alone would not give rise to an equal protection claim. More than a disparate impact has to be shown. Under the rule of *Washington v. Davis*,[6]

> a law, neutral on its face and serving ends otherwise within the power of government to pursue, is [not] invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another. Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination forbidden by the Constitution. Standing alone, it does not trigger the rule that racial classifications are to be subjected to the strictest scrutiny and are justifiable only by the weightiest of considerations.[7]

It is now well established that "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause," [8] and that "the absence of proof of discriminatory intent forecloses any claim that the official action challenged in this case violates the Equal Protection Clause." [9] Defendant offers no evidence that the alleged disproportionate impact of 845a upon racial minority groups reflects any discriminatory purpose on the part of Congress or the law enforcement officials charged with administering the statute. Indeed, he concedes there was no intent to discriminate on the part of Congress in enacting section 845a.[10] It is sufficient for equal protection purposes that the statute, as already noted, bears a rational relationship to a legitimate governmental interest.[11]

Defendant argues, however, that the rule of *Washington v. Davis* does not apply in this case because the alleged disparate impact burdens not only a suspect class but

---

**5.** *See Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

**6.** 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

**7.** *Id.* at 242, 96 S.Ct. at 2049 (citation omitted).

**8.** *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977).

**9.** *City of Memphis v. Greene,* 451 U.S. 100, 119, 101 S.Ct. 1584, 1596, 67 L.Ed.2d 769 (1981).

**10.** Defendant's brief at 12.

**11.** *See Woe v. Cuomo,* 729 F.2d 96, 103–04 (2d Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 339, 83 L.Ed.2d 274 (1984); *Soberal-Perez v. Heckler,* 717 F.2d 36, 42 (2d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1713, 80 L.Ed.2d 186 (1984); *see also Personnel Adm'r v. Feeney,* 442 U.S. 256, 271–72, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979); *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976) (per curiam).

affects what he calls "the purity of the criminal justice system." He attempts to distinguish *Washington v. Davis* upon the ground that the official conduct there in issue did not affect "the vital liberty interest present in the criminal justice area." Where, as here, both a suspect class and a liberty interest are burdened by the discriminatory effect of an otherwise valid statute, he asserts, these protected interests in combination are too important to require a showing of discriminatory intent before subjecting the statute to strict scrutiny under the equal protection guarantee.

In effect, defendant urges the Court to adopt a rule that, *Washington v. Davis* notwithstanding, racially disparate impact alone does give rise to an equal protection claim whenever that impact takes the form of a criminal sanction involving imprisonment. Under this rule, any criminal law designed to serve neutral ends nevertheless would be invalid, absent compelling justification, if in practice it burdened one race more than another. Whether or not such a rule would be desirable, it surely "would be far reaching and would raise serious questions about, and perhaps invalidate, a whole range of [criminal laws] that may be more burdensome" to the average minority group member than to others.[12] In *Washington v. Davis*, the Supreme Court expressed concern about setting in motion such sweeping changes in the system of civil laws, and there is no reason to believe that that concern is any less relevant with respect to the criminal justice system. Several Courts of Appeals have applied the rule of *Washington v. Davis* in criminal cases, requiring proof of discriminatory intent to show a violation of the Equal Protection Clause despite a claim that official conduct had a racially disparate impact

upon a liberty interest. Indeed, in many of these cases the Courts of Appeals did so even though the conduct being challenged involved the imposition of the death penalty.[13] Thus, defendant's attempt to avoid the well established rule that proof of discriminatory intent is required to sustain an equal protection claim simply upon the ground that this is a criminal case is unsupported by reason or authority.

Accordingly, defendant's motion to dismiss the schoolhouse count upon due process and equal protection grounds is denied.

So ordered.

**12.** *Washington,* 426 U.S. at 248, 96 S.Ct. at 2051.

**13.** *See Shaw v. Martin,* 733 F.2d 304, 311–14 (4th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 230, 83 L.Ed.2d 159 (1984); *Adams v. Wainwright,* 709 F.2d 1443, 1449–50 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984); *Harris v. Pulley,* 692 F.2d 1189, 1198–99 (9th Cir.1982), *rev'd on other grounds,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d

29 (1984); *Smith v. Balkcom,* 660 F.2d 573, 585 (5th Cir.1981), *modified,* 671 F.2d 858 (5th Cir.), *cert. denied,* 459 U.S. 882, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982); *see also Inmates of the Nebraska Penal & Correctional Complex v. Greenholtz,* 567 F.2d 1368, 1374–75, 1380 (8th Cir.1977) (discretionary parole allegedly denied on racial and ethnic grounds), *cert. denied,* 439 U.S. 841, 99 S.Ct. 132, 58 L.Ed.2d 140 (1978).