**UNITED STATES of America, Plaintiff,**

v.

**Jesse DIXON and Fitzgerald Bowens, Defendants.**

**No. 84 Crim. 803 (WCC).**

United States District Court, S.D. New York.

Oct. 16, 1985.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for plaintiff; Adam S. Hoffinger, Asst. U.S. Atty., New York City, of counsel.

Caesar D. Cirigliano, The Legal Aid Society, Federal Defender Services Unit, New York City, for defendant Fitzgerald Bowens; Ruth M. Chamberlin, New York City, of counsel.

OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

Jesse Dixon and Fitzgerald Bowens ("Bowens") are named as defendants in a two-count indictment charging them with (1) conspiracy to distribute and to possess with intent to distribute phencyclidine, in violation of 21 U.S.C. § 846 (1982), and (2) distribution of phencyclidine within one thousand feet of Public School 144 in Manhattan, in violation of 21 U.S.C. §§ 812, 841(a)(1), 845a (1982 & Supp. II 1984).

Bowens moves pursuant to Fed.R.Crim.P. 12 to dismiss the second, or "schoolhouse," count upon the grounds that section 845a violates the due process and equal protection guarantees of the fifth amendment to the Constitution.[1] For the reasons set forth below, Bowens's motion is denied.

■ Bowens argues that § 845a violates his right to due process of law because it creates an irrebutable presumption that sales of narcotics within one thousand feet of a school adversely affect schoolchildren. Bowens does not dispute that Congress had a legitimate purpose in enacting § 845a, namely, to protect school-age children from the dangers posed by the sale of narcotics. Memorandum of Law in Support of Defendant's Motion to Dismiss at 5 [hereinafter cited as "Defendant's Memorandum"]. He also does not dispute that the relationship between Congress's purpose and the challenged presumption need only be a rational one. *Id.* at 8. Instead, he argues that because schoolchildren are not present during many drug sales within one thousand feet of a school, including the one charged,[2] the irrebuttable presumption created by § 845a is not rationally related to Congress's purpose. *Id.* at 5–8. Bowens's argument is without merit. As Judge Weinfeld observed in *United States v. Nieves*, 608 F.Supp. 1147, 1149 (S.D.N.Y.1985),

> [t]he presumption that narcotics sales in the vicinity of an elementary or secondary school endanger the students and thus should be subject to stiffer penalties

is substantially related to Congress's interest in shielding these children from the evils of the drug trade. Whether or not a child is involved in or otherwise present during any particular sale of narcotics within one thousand feet of a school, subjecting the seller to enhanced penalties reasonably may be expected to deter the seller and other illicit dealers from conducting their operations near school property in the future. In such areas, where school children congregate in large numbers before, during, and after school sessions, they are readily subject to the illicit activities of those who ply narcotics to the victims of drug abuse and addiction.... It is difficult to imagine a more rational way of keeping drug traffickers out of areas where children are more likely to come into contact with them than to subject them to a risk of stiffer penalties for doing business near school property. By focusing on the particular transaction for which he is charged, defendant fails to consider the long term effect of section 845a on the health and welfare of schoolchildren in general.

■ Bowens's equal protection argument is also without merit. He contends that, because § 845a has a disproportionate impact on members of racial minorities living in inner city areas, it denies him the equal protection of the laws guaranteed by the fifth amendment, *see Bolling v.*

---

1. Section 845a, enacted on October 12, 1984 as part of the Controlled Substances Penalties Amendments Act of 1984, Pub.L. No. 98–473, sec. 503(a), § 405A, 98 Stat. 1837, 2069, provides for enhanced penalties upon conviction for distributing a controlled substance within one thousand feet of a public or private elementary or secondary school. In the event of a conviction under this section, the term of imprisonment would be up to twice that, and the term of parole at least twice that, authorized for unlawful narcotics sales generally. 21 U.S.C. § 845a(a) (Supp. II 1984). In the event of a second or subsequent conviction under this section, the statute provides for the imposition of a mandatory term at least three times longer than that provided for repeat offenders generally, up to a maximum term of life imprisonment, 21 U.S.C. § 845a(b) (Supp. II 1984), and there would be no eligibility for parole before a pre-

scribed minimum sentence of at least three years had been served, 21 U.S.C. § 845a(c) (Supp. II 1984).

Although section 845a is but one year old, the judges of this Court have considered identical challenges to its constitutionality on several occasions. Without exception, those challenges have been rejected. *See United States v. Singer*, No. 85 Cr. 553 (RWS) (S.D.N.Y. Sept. 26, 1985); *United States v. Cunningham*, 615 F.Supp. 519 (S.D.N.Y.1985); *United States v. Agilar*, 612 F.Supp. 889 (S.D.N.Y.1985); *United States v. Nieves*, 608 F.Supp. 1147 (S.D.N.Y.1985).

2. The narcotics transaction charged in count two of the indictment is alleged to have occurred on August 6, 1985 at approximately 7:40 p.m. Defendant maintains that Public School 144 was closed for the summer.

*Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Defendant's Memorandum at 9–13. Even assuming that § 845a has a racially disparate impact,[3] that fact alone would not give rise to an equal protection claim. Under the rule of *Washington v. Davis,* 426 U.S. 229, 242, 96 S.Ct. 2040, 2049, 48 L.Ed.2d 597 (1976),

> a law, neutral on its face and serving ends otherwise within the power of government to pursue, is [not] invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than another. Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination forbidden by the Constitution. Standing alone, it does not trigger the rule that racial classifications are to be subjected to the strictest scrutiny and are justifiable only by the weightiest of considerations.

Rather, it is now well established that "[p]roof of a racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause," *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977), and that "the absence of proof of discriminatory intent forecloses any claim that the official action challenged in this case violates the Equal Protection Clause," *City of Memphis v. Greene,* 451 U.S. 100, 119, 101 S.Ct. 1584, 1596, 67 L.Ed.2d 769 (1981). Bowens does not allege that Congress intended to discriminate on the basis of race in enacting § 845a[4] and there is no indication or reason to believe that this was Congress's goal. It is therefore sufficient for equal protection purposes that the statute, as noted above, bears a rational relationship to a legitimate governmental interest.

 Finally, Bowens argues that under *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963),[5] strict scrutiny must be applied to criminal statutes that "affect vital liberty interests such as those present in criminal cases." Defendant's Memorandum at 11. However, Bowens's reliance on *Douglas* is misplaced. The statute challenged in that case was subjected to strict scrutiny because, by denying the indigent defendants the right to appellate counsel, it impaired a fundamental right. Section 845a impairs no fundamental right. Rather, it distinguishes between those individuals who sell narcotics within one thousand feet of a school and those who sell narcotics outside that region. As Judge Sweet noted in *United States v. Agilar,* 612 F.Supp. 889, 891 (S.D. N.Y.), the Supreme Court has often applied a rational basis test in upholding criminal statutes drawing similar distinctions, *see, e.g., Estelle v. Dorrough,* 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975) (per curiam); *Marshall v. United States,* 414 U.S. 417, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974); *McGinnis v. Reyster,* 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973).

For the foregoing reasons, Bowens's motion to dismiss count two of the indictment is denied.

SO ORDERED.

---

**3.** Bowens offers no evidence, statistical or otherwise, to support his assumption that the statute burdens one race more than another.

**4.** Indeed, Bowens concedes that there was *no* intent to discriminate on the part of Congress in enacting section 845a. *See* Defendant's Memorandum at 12 ("[U]nder these circumstances the fact that the disproportionate impact is not intentional is not significant.").

**5.** Bowens also cites *Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966), and *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). Defendant's Memorandum at 11. Neither case is apposite, however, since neither involved the application of strict scrutiny.