[No. C011922. Third Dist. Nov. 10, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
STEPHON LAMAR WILLIAMS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

  \*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and II.

**COUNSEL**

John Doyle, under appontment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Scott Thorpe and Suzanne M. Ambrose, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

NICHOLSON, J.—A jury convicted defendant Stephon Lamar Williams of possession of cocaine base for sale within 1,000 feet of a public high school (Health & Saf. Code, §§ 11351.5 and 11353.6—count 1), battery on a police officer (Pen. Code, § 243, subd. (b)—count 2), and resisting a police officer (Pen. Code, § 148, subd. (a)—count 3). The court found Williams had violated probation imposed in an unrelated case. It also found true three of four allegations involving prior convictions. Williams was sentenced to 12 years in prison.

On appeal, Williams challenges various evidentiary rulings, asserts prosecutorial misconduct warrants reversal, and argues there was insufficient evidence to support the public school enhancement.

In the published part of this opinion, we reject Williams's last contention. In the unpublished portion, we find no merit in his remaining claims of error. Accordingly, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 23, 1990, Sacramento City Police Officers John Kingsbury, Michael Peters, and Robert Ramirez, and University of California, Davis, Police Officer David Robinson were working the graveyard shift in the Oak Park area of Sacramento. Around 11 p.m., they conducted a probation search at the St. Charles Apartments located across the street from Sacramento High School.

Upon their arrival, the police officers detained several people in the courtyard of the apartment complex. Next, Officer Kingsbury approached apartment 11, known to be occupied by Mario McEatchin. He spoke with Charee McEatchin in front of the apartment. She responded there was no one in the apartment other than her two children. Officer Kingsbury entered apartment 11, found the two children in the living room, and sent them outside. He then knocked on the bedroom door, opened it, and announced he was a police officer.

Officer Kingsbury found Williams seated in front of the dresser doing something with his hands. Mario McEatchin was standing to his right, looking on. Kingsbury saw what appeared to be 10 rocks of cocaine on the dresser. When Williams and McEatchin became aware of Kingsbury's presence, they "kind of threw the cocaine in the air." The officer also saw a razor blade fly into the air, bounce, and land on the dresser or the floor.

Officer Kingsbury ordered Williams and McEatchin out of the room. When Williams reached the front door, he attempted to flee. Williams knocked down Officer Ramirez who had been standing on the sidewalk in front of the apartment complex. Officer Robinson chased Williams for about 100 yards before apprehending him. During a patdown search of Williams, Officer Robinson found $1,157 in his pocket.

A search of McEatchin's apartment recovered approximately 52 pieces of rock cocaine (5.22 grams) on the bedroom floor, dresser, and closet. A razor blade and plastic baggie, commonly used in the sale of rock cocaine, were also found in the bedroom. However, there was no paraphernalia associated with cocaine use found in the apartment.

Officer Eric Nygren was called to the St. Charles Apartments as backup. He arrested Mattie Estes, a resident of apartment 13. During a postarrest interview, Estes told Nygren that "Carlos, Billy, Mario, and Stephon were out dealing dope." At trial, Estes denied telling Nygren that Williams had been selling drugs. She did, however, testify she witnessed cocaine sales in the apartment complex eight to nine times a day during the thirteen months she lived there.

At trial, Williams's father, David Giles, testified he gave Williams $1,200 in cash on July 23, 1990, to buy a car. Giles stated the money was part of a federal income tax refund he received that day.

Mario McEatchin also testified in Williams's defense at trial. He stated the cocaine found in the apartment was his, and he pled guilty to possession of that cocaine with intent to sell. McEatchin also testified Williams came into his apartment the night of July 23 to use the bathroom. He denied he and Williams had thrown the cocaine out of their hands when Officer Kingsbury first entered the bedroom.

DISCUSSION

I, II*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

*See footnote, *ante,* page 1389.

## III

### *Public School Enhancement*

Health and Safety Code section 11353.6, the Juvenile Drug Trafficking and Schoolyard Act, provides in relevant part: "(b) Any person 18 years of age or over who is convicted of a violation of Section 11351.5 . . . where such violation takes place upon the grounds of, or within 1,000 feet of, a public or private elementary, vocational, junior high school or *high school*, shall receive an additional punishment of 3, 4, or 5 years at the court's discretion." (Italics added.)

■ Williams concedes the alleged offense took place within 1,000 feet of a public high school, but argues there was insufficient evidence school was in session on July 23, 1990. He questions the applicability of Health and Safety Code section 11353.6 to this case.[8] Construction of Health and Safety Code section 11353.6 presents an issue of first impression.

■ The primary task in statutory construction is determination of legislative intent as revealed by the words of the statute. (*Wells Fargo Bank* v. *Superior Court* (1991) 53 Cal.3d 1082, 1095 [282 Cal.Rptr. 841, 811 P.2d 1025].) Courts decline to follow the plain meaning of a statute only when it inevitably frustrates the manifest purposes of the legislation as a whole or leads to absurd results. (*People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473].)

■ Williams states "the obvious purpose of enacting this legislation was to eliminate trafficking in crack cocaine (cocaine base) with schoolchildren." He concedes the statute should apply to after school hours when school is in session because children are likely to be engaged in extracurricular activities. At the same time, Williams argues it would be absurd to conclude the statute is enforceable when school is not in session because such a construction would result in its application to drug trafficking near abandoned school buildings.

---

[8]Williams challenged the Health and Safety Code section 11353.6 enhancement for the first time at the close of the prosecution's case in his Penal Code section 1118.1 motion to dismiss. He unsuccessfully argued there was insufficient evidence to show the alleged offense took place within 1,000 feet of a public high school. Williams raised the question of the statute's applicability for the first time in his statement in mitigation. He urged the court to stay the enhancement at sentencing. On appeal, both parties address the issue of statutory construction in the context of Williams's claim there was insufficient evidence to support the enhancement. We do not consider his claim the court abused its discretion in failing to strike the enhancement because the record fails to show he ever moved to strike.

We conclude the language of Health and Safety Code section 11353.6 clearly reveals a legislative purpose to eliminate drug trafficking with schoolchildren. Its application to the facts of this case is consistent with that purpose. There being no language expressly limiting application to the regular school year, Health and Safety Code section 11353.6 applies at all times.

Our conclusion is supported by the presumption the Legislature intended to omit all time limitations in Health and Safety Code section 11353.6 where it imposed time limits in related statutes. (*Crippen* v. *Superior Court* (1984) 159 Cal.App.3d 254, 260 [205 Cal.Rptr. 477].) Health and Safety Code section 11353.1 (employment of a minor for unlawful transactions at a church, synagogue, playground, youth center or public swimming pool, or within 1,000 feet of a public or private school) limits its application to the hours in which the facility is open for business, classes, or school-related programs, or at any time when minors are using the facility; Health and Safety Code section 11353.5 (giving or selling a controlled substance to a minor on school grounds or a public playground, or at a church or synagogue) limits its application to the hours those facilities are open for classes or school-related programs, or at any time minors are using the facility; and Health and Safety Code section 11353.7 (preparing a controlled substance for sale to a minor in a public park) applies during hours the park is open for use. (See also Veh. Code, §§ 22352, subd. (b)(2), 22357.1.) Moreover, lawmakers declined to amend section 11353.6 to include a time limitation when they amended Health and Safety Code sections 11353.1, 11353.5 and 11353.7 in 1990. (See Historical & Statutory Notes, 40 Pt. 1 West's Ann. Health & Saf. Code (1991 ed.) §§ 11353.1, 11353.5, 11353.7, pp. 428-431.)

A similar federal statute, 21 United States Code section 860 (formerly § 845a), was enacted in 1984 to provide enhanced penalties for selling narcotics within 1,000 feet of a public or private elementary or secondary school. Federal courts have upheld that statute against challenges on due process and equal protection grounds. In *United States* v. *Nieves* (S.D.N.Y. 1985) 608 F.Supp. 1147, 1149, for example, the drug transaction took place at 4 p.m., two blocks away from a school. There was no allegation of, or evidence presented that schoolchildren were present.

In their motion to dismiss, the defendants in *Nieves* argued the section violated due process because it established an invalid irrebuttable presumption that all narcotics sales within 1,000 feet of school property have a special detrimental effect on children, regardless of whether school-aged children are present during the transaction.

The court rejected their argument and explained its rationale for applying the statute to sales occurring after school hours: "The presumption that narcotics sales in the vicinity of an elementary or secondary school endanger the students and thus should be subject to stiffer penalties is substantially related to Congress's interest in shielding these children from the evils of the drug trade. *Whether or not a child is involved in or otherwise present during any particular sale of narcotics within one thousand feet of a school, subjecting the seller to enhanced penalties reasonably may be expected to deter the seller and other illicit dealers from conducting their operations near school property in the future.* In such areas, where children congregate in large numbers before, during, and after school sessions, they are readily subject to the illicit activities of those who ply narcotics to the victims of drug abuse and addiction. The sale and distribution of drugs to youngsters for their use may subject them to the evils of addiction, a hazard to them not only physically and psychologically but financially, with the prospect that their need for drugs, once they are addicted, will lead them into a life of crime to obtain funds to support their habit. They may be drawn into drug rings as participants themselves, aiding the sale and distribution of narcotics to others, including their schoolmates. Indeed, judicial notice may be taken of the destructive results of drug addiction, the source of which Congress clearly intended to keep out of the easy reach of school-age children. It is difficult to imagine a more rational way of keeping drug traffickers out of areas where children are more likely to come into contact with them than to subject them to a risk of stiffer penalties for doing business near school property." (608 F.Supp. at pp. 1149-1150, italics added, fn. omitted.)

Nieves and his codefendant also framed an equal protection argument which the court rejected and which, in any event, bears no relevance here.

The same court later rejected similar due process and equal protection arguments and again upheld the statute in a prosecution arising from a drug transaction alleged to have occurred within 1,000 feet of a school closed for the summer. (See *United States* v. *Dixon* (S.D.N.Y. 1985) 619 F.Supp. 1399; 3 Rapp, Education Law (1992) Criminal Liabilities, § 12.05[6], pp. 12-100.5-12-100.6.)

Deterrence of future drug activity near schools provides ample justification for applying the California statute at all times, whether or not school is in session. We conclude there was sufficient evidence to support the jury verdict on the Health and Safety Code section 11353.6 enhancement.

DISPOSITION

The judgment is affirmed.

Sims, Acting P. J., concurred.

**RAYE, J.**—I concur, and as to part I, section B, I concur in the result only.

A petition for a rehearing was denied December 8, 1992, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied February 24, 1993.