Filed 9/25/15  P. v. Jackson CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>WALLACE JACKSON,<br><br>      Defendant and Appellant. | D065962<br><br><br><br>(Super. Ct. No. SCD189406) |

APPEAL from an order of the Superior Court of San Diego County, David J. Danielsen, Judge.  Affirmed.

Sheila Quinlan, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

In 2005 Wallace Jackson pleaded guilty to one count of indecent exposure with a prior indecent exposure conviction (Pen. Code, § 314)[1] and admitted he had nine prior strike convictions within the meaning of sections 667, subdivisions (b) through (i) and 1170.12, and three prison priors within the meaning of section 667.5, subdivision (b). The court sentenced Jackson to an indeterminate term of 25 years to life for his conviction.  In 2012 Jackson moved to recall his sentence pursuant to the recently enacted Three Strikes Reform Act of 2012 (§ 1170.126 et seq., hereafter TSRA).  The court denied his petition, and this appeal followed.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. <u>The Current Offenses and Sentence</u>

In 2005 Jackson was charged with two counts of indecent exposure with a prior indecent exposure conviction (§ 314) and with the further allegations he had nine prior strike convictions (§§ 667, subds. (b)-(i) & 1170.12) and three prison priors (§ 667.5, subd. (b)).  Jackson pleaded guilty to one count of indecent exposure with a prior indecent exposure conviction (§ 314), admitted the prior strike and prison prior allegations, and was sentenced to an indeterminate term of 25 years to life for his conviction.

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

B. The Recall Petition

In 2012, Jackson filed a petition seeking to recall his sentence under the TSRA. The petition argued his current offense (the 2005 conviction) did not bar him from relief under the TSRA and his prior strike convictions did not disqualify him from resentencing under the TSRA; therefore, the court should recall his sentence, find he was not currently dangerous, and resentence him under the TSRA.

The People's reply to Jackson's recall petition conceded he had prima facie shown he was qualified under the TSRA to be considered for resentencing. However, the People noted Jackson's record before the commitment offense involved repeated reoffenses, and he had a prison record of violence and indecent exposure. The People argued he remained a public safety risk and should not be released but, were Jackson resentenced, he should be resentenced subject to postrelease community supervision.

The court concluded Jackson was an unreasonable risk of danger to public safety were he to be resentenced and released under the TSRA, and therefore denied the petition. Jackson timely appealed.

ANALYSIS

Jackson raises numerous challenges to the order denying his sentence recall petition. He argues the order must be reversed because the prosecution was required to prove beyond a reasonable doubt that he posed an unreasonable risk of danger to public safety, he was entitled to have a jury determine that issue, and reversal is therefore required because he was denied the protections as to both the standard of proof and the proper decision maker. Jackson also contends the provisions of Proposition 47, the Safe

3

Neighborhoods and Schools Act (hereafter Proposition 47), adopted by the voters on November 4, 2014, superimposes upon the TSRA a new definition for whether an inmate poses an unreasonable risk of danger to public safety for purposes of resentencing, and there is no substantial evidence to support the court's finding that he would pose an unreasonable risk of danger to public safety under Proposition 47's definitional strictures. Jackson also asserts that, even assuming the court was the proper decision maker, properly applied a preponderance of the evidence standard, and was not required to apply Proposition 47's more restrictive definition of dangerousness, the evidence is insufficient to support the court's finding he would pose an unreasonable risk of danger to public safety were he resentenced under the TSRA.

A. <u>Jackson's Sixth Amendment Claims</u>

Jackson asserts that because the statutory scheme makes second strike sentencing the presumptive sentencing choice for persons eligible for resentencing under the TSRA, and only permits a departure from that sentence when there is a finding that a critical factor (i.e. the inmate poses an unreasonable risk of danger to public safety) is present, the factor is a determination that increases the sentence for the inmate beyond the presumptive sentencing choice. Jackson argues the principles announced in *Apprendi v. New Jersey* (2000) 530 U.S. 466 provide him with protections under the Sixth Amendment to the United States Constitution to require the prosecution to prove that factor beyond a reasonable doubt, and provides the right to a jury trial on that factor.

4

1. *The Burden of Proof Claim*

Jackson argues that, under the rationales of *Apprendi* and *Alleyne v. United States* (2013) ___ U.S. ___ [133 S.Ct. 2151], the prosecution must prove the dangerousness factor beyond a reasonable doubt. This precise claim has been rejected by the courts in *People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279 (*Kaulick*) and *People v. Osuna* (2014) 225 Cal.App.4th 1020 (*Osuna*). The *Osuna* court, relying in part on *Kaulick*, "conclude[d] disqualifying factors need not be proven to a jury beyond a reasonable doubt where eligibility for resentencing under section 1170.126 is concerned." (*Osuna*, at p. 1038, fn. omitted.) *Osuna* held that "*Apprendi* and its progeny do not apply to a determination of eligibility for resentencing under the Act" (*id*. at p. 1039) because "[a] finding an inmate is not eligible for resentencing under section 1170.126 does not increase or aggravate that individual's sentence; rather, it leaves him or her subject to the sentence originally imposed. The trial court's determination here that defendant was armed with a firearm during the commission of his current offense did not increase the penalty to which defendant was already subject, but instead disqualified defendant from an act of lenity on the part of the electorate to which defendant was not constitutionally entitled." (*Id*. at p. 1040.) Similarly, *Kaulick* concluded that:

> "dangerousness is not a factor which enhances the sentence imposed
> when a defendant is resentenced under the Act; instead,
> dangerousness is a hurdle which must be crossed in order for a
> defendant to be resentenced at all. If the court finds that
> resentencing a prisoner would pose an unreasonable risk of danger,
> the court does not resentence the prisoner, and the petitioner simply
> finishes out the term to which he or she was originally sentenced.
> [¶] The maximum sentence to which Kaulick, and those similarly
> situated to him, is subject was, and shall always be, the

5

indeterminate life term to which he was originally sentenced. While Proposition 36 presents him with an opportunity to be resentenced to a lesser term, unless certain facts are established, he is nonetheless still subject to the third strike sentence based on the facts established at the time he was originally sentenced. As such, a court's discretionary decision to decline to modify the sentence in his favor can be based on any otherwise appropriate factor (i.e., dangerousness), and such factor need not be established by proof beyond a reasonable doubt to a jury." (*Kaulick, supra,* 215 Cal.App.4th at p. 1303, fn. omitted.)

*Kaulick* buttressed its determination by noting that "the United States Supreme Court has already concluded that its opinions regarding a defendant's Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt do not apply to limits on downward sentence modifications due to intervening laws" citing *Dillon v. United States* (2010) 560 U.S. 817. As *Kaulick* explained:

"At issue in *Dillon* was a modification to the sentencing guideline range for the offense of which the defendant was convicted. The law provided that a prisoner's sentence could be modified downward when the range had been lowered; however, the law provided that a sentence could only be lowered if consistent with applicable policy statements. Those policy statements, in turn, provided that a sentence could not be reduced below the minimum sentence of an amended sentencing range except to the extent that the original term was below the original range. The Supreme Court had already held that, in order to avoid constitutional problems, the federal sentencing guidelines were advisory, rather than mandatory. The issue in *Dillon* was whether the policy statement, which did not permit reducing a sentence below the amended range except to the extent the original term was below the original range, must also be rendered advisory. [*Dillon*, at p. 819.] The Supreme Court concluded that it remained mandatory. This was so because the statute allowing resentencing when the sentencing range was lowered was, itself, not a plenary resentencing in the usual sense. Instead, the statute simply authorized a limited adjustment to an otherwise final sentence. [*Dillon,* at p. 827.] The court stated, 'Notably, the sentence-modification proceedings authorized by [the statute] are not constitutionally compelled. We are aware of no

6

constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent Guidelines amendments. Rather [the statute] represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines. [¶] Viewed that way, proceedings under [this statute] do not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt. Taking the original sentence as given, any facts found by a judge at a [modification downward] proceeding do not serve to increase the prescribed range of punishment; instead, they affect only the judge's exercise of discretion within that range.' [*Dillon,* at p. 828.] Such decisions, stated the court, simply do not implicate Sixth Amendment rights. (*Ibid.*) [¶] The language in *Dillon* is equally applicable here. The retrospective part of the Act is not constitutionally required, but an act of lenity on the part of the electorate. It does not provide for wholesale resentencing of eligible petitioners. Instead, it provides for a proceeding where the original sentence may be modified downward. Any facts found at such a proceeding, such as dangerousness, do not implicate Sixth Amendment issues. Thus, there is no constitutional requirement that the facts be established beyond a reasonable doubt." (*Kaulick, supra*, 215 Cal.App.4th at pp. 1304-1305.)

We agree with the analysis of *Kaulick* and *Osuna* and conclude the retrospective part of the TSRA is not constitutionally required, but instead represents an act of lenity on the part of the electorate permitting the potential for the original sentence to be modified downward. Facts found at such a proceeding, including the factor of dangerousness, do not implicate Sixth Amendment issues and need not be proved beyond a reasonable doubt.

2. *The Jury Trial Claim*

The same rationale convinces us that Jackson did not have a right to a jury trial on dangerousness. Both *Osuna* and *Kaulick* have concluded that *Apprendi's* principles, which include the right to have a jury determine factors aggravating a sentence, do not

7

apply to recall petitions under the TSRA.  (*Osuna, supra*, 225 Cal.App.4th at p. 1039 ["*Apprendi* and its progeny do not apply to a determination of eligibility for resentencing under the [TSRA]"]; *Kaulick, supra,* 215 Cal.App.4th at p. 1304 ["the United States Supreme Court has already concluded that its opinions regarding a defendant's Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt do not apply to limits on downward sentence modifications due to intervening laws"].) Although Jackson argues these cases were wrongly decided, we do not believe *Kaulick's* conclusion as to *Dillon's* impact on downward sentence modifications under the TSRA was erroneous, and therefore we conclude Jackson did not have the right to have a jury trial on the issue of dangerousness.

   B. The Proposition 47 Claim

   Jackson argues the provisions of Proposition 47, by adding section 1170.18, redefined the standard for determining whether an inmate poses an unreasonable risk of danger to public safety for purposes of resentencing under the TSRA.  Jackson argues that, once this new definition is applied to his application under the TSRA, there is no substantial evidence to support the court's finding that he would pose an unreasonable risk of danger to public safety.[2]

   On November 4, 2014, voters enacted Proposition 47, which went into effect the next day.  (Cal. Const., art. II, § 10, subd. (a).)  The focus of Proposition 47 was to render misdemeanors a class of certain drug- and theft-related offenses previously categorized as

---

[2]    Jackson's brief does not address, and we express no opinion on, whether he might be eligible to bring a petition for recall under Proposition 47.

8

felonies or "wobblers," unless they were committed by certain ineligible defendants. Proposition 47 also created a new resentencing provision—section 1170.18—analogous to the resentencing provisions of the TSRA that permitted a person currently serving a felony sentence for an offense now a misdemeanor to petition for a recall of that sentence and request resentencing in accordance with the offense statutes as added or amended by Proposition 47. (§ 1170.18, subd. (a).)

Among the lengthy provisions of Proposition 47, as presented to and adopted by the voters, is subdivision (c) of section 1170.18, the provision on which Jackson relies in the present appeal. That subdivision provides: "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667" (§ 1170.18, subd. (c)), thereby incorporating by reference section 667, subdivision (e)(2)(C)(iv)'s list of particularly heinous felonies. Jackson asserts section 1170.18, subdivision (c), now limits a trial court's discretion to deny resentencing under the TSRA to those cases in which resentencing the defendant would pose an unreasonable risk he or she will commit one of the listed particularly heinous felonies and, because there was no substantial evidence to support a finding Jackson posed an unreasonable risk of committing one of the listed particularly heinous felonies, he argues the trial court's order must be reversed.

Our task is one of statutory construction.[3]  Although the TSRA and Proposition 47 employ similar language, this does not inexorably require that the definition contained in section 1170.18, subdivision (c), must be read into section 1170.126, subdivision (f), because "[t]he literal language of a statute does not prevail if it conflicts with the lawmakers' intent" (*Osuna, supra*, 225 Cal.App.4th at p. 1033), nor will the " 'apparent purpose of a statute . . . be sacrificed to a literal construction.' " (*Cossack v. City of Los Angeles* (1974) 11 Cal.3d 726, 733.)  Rather, we must construe the statute in accord with its purpose, and a court should not construe the language of a statute in its literal sense if doing so "would result in absurd consequences that the [voters] did not intend" (*In re Michele D.* (2002) 29 Cal.4th 600, 606), or would "frustrate[] the manifest purposes of the legislation as a whole . . . ."  (*People v. Williams* (1992) 10 Cal.App.4th 1389, 1393.) "To this extent, therefore, intent prevails over the letter of the law and the letter will be read in accordance with the spirit of the enactment." (*In re Michele D., supra,* 29 Cal.4th at p. 606.)

We consult " 'a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.  [Citations.]'  [Citation.]  We also ' "refer to other indicia of the voters'

---

3    We note the California Supreme Court has granted review to determine whether the definition of "unreasonable risk of danger to public safety" under Proposition 47 applies to resentencing under the TSRA.  (*People v. Valencia* (2014) 232 Cal.App.4th 514, review granted Jan. 16, 2015, S223825.)  Pending direction from the Supreme Court, we must reach the issue here.

10

intent, particularly the analyses and arguments contained in the official ballot pamphlet."

[Citation.]' " (*Osuna, supra*, 225 Cal.App.4th at p. 1034.) With these extrinsic aids, we

" ' "select the construction that comports most closely with the apparent intent of the

[electorate], with a view to promoting rather than defeating the general purpose of the

statute, and avoid an interpretation that would lead to absurd consequences."

[Citation.]' " (*Id*. at pp. 1034-1035.)

Although the TSRA and Proposition 47 address related subjects, they target

different subjects; we conclude Proposition 47's literal meaning would not comport with

the purpose of the TSRA, and applying it to resentencing proceedings under the TSRA

would frustrate, rather than promote, that purpose and the intent of the electorate in

enacting both initiative measures. First, as is evidenced by its title, the TSRA was aimed

solely at revising a law—the three strikes law—the principal focus of which was to

punish recidivism with more severe sentences. (See, e.g., *People v. Cooper* (1996) 43

Cal.App.4th 815, 823-824.) Just a few months before the November 6, 2012, election at

which the TSRA was passed, the California Supreme Court recognized that "[o]ne aspect

of the [three strikes] law that has proven controversial is that the lengthy punishment

prescribed by the law may be imposed not only when . . . a defendant [who has

previously been convicted of one or more serious or violent felonies] is convicted of

another serious or violent felony but also when he or she is convicted of any offense that

is categorized under California law as a felony. This is so even when the current, so-

called triggering, offense is nonviolent and may be widely perceived as relatively minor."

(*In re Coley* (2012) 55 Cal.4th 524, 528-529.)

11

When voters approved the TSRA, they resolved this controversy in favor of strike offenders. In one of the "Findings and Declarations" of the TSRA, the voters approved the declaration that the TSRA would "[r]estore the Three Strikes law to the public's original understanding by requiring life sentences only when a defendant's current conviction is for a violent or serious crime." (S.D. Voter Information Pamp., Gen. Elec. (Nov. 6, 2012) text of Prop. 36, § 1, p. 105, at <http://vig.cdn.sos.ca.gov/2012/general/pdf/complete-vig-v2.pdf> [as of Sep. 23, 2015].) Nowhere, however, do the ballot materials for the TSRA suggest voters understood or intended the TSRA would require resentencing of qualified third strike offenders in all but the most egregious cases, as would be the result if the definition of " 'unreasonable risk of danger to public safety' " contained in section 1170.18, subdivision (c), were engrafted onto resentencing proceedings under the TSRA. That voters did *not* intend such a result is amply demonstrated by the fact an indeterminate life term remained mandatory under the TSRA for a wide range of current offenses even if the offender does not have a prior conviction for a particularly heinous offense (§§ 667, subd. (e)(2), 1170.12, subd. (c)(2)), and an inmate is rendered ineligible for resentencing under section 1170.126 for an array of reasons beyond his or her having suffered such a prior conviction (see § 1170.126, subd. (e)(2)).

When voters adopted the reforms of the TSRA, that enactment was still presented as placing public safety first, even though there were also cost savings likely to accrue as a result of its enactment. Thus, uncodified section 7 of the Act provides: "This act is an exercise of the public power of the people of the State of California *for the protection of*

12

*the health, safety, and welfare of the people of the State of California,* and shall be liberally construed to effectuate those purposes." (S.D. Voter Information Pamp., Gen. Elec. (Nov. 6, 2012), *supra,* text of Prop. 36, p. 110, original italics omitted, italics added.) As explained in *Osuna, supra*, 225 Cal.App.4th at page 1036, "[a]lthough the [TSRA] 'diluted' the three strikes law somewhat [citation], '[e]nhancing public safety was a key purpose of the Act' [citation]."

In contrast, Proposition 47 emphasized monetary savings.[4] The "Findings and Declarations" state: "The people of the State of California find and declare as follows: [¶] The people enact the Safe Neighborhoods and Schools Act to ensure that prison spending is focused on violent and serious offenses, to maximize alternatives for nonserious, nonviolent crime, and to invest the savings generated from this act into prevention and support programs in K–12 schools, victim services, and mental health and drug treatment. This act ensures that sentences for people convicted of dangerous crimes like rape, murder, and child molestation are not changed." (S.D. Voter Information Pamp., Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 2, p. 70 (Pamphlet), at <http://vig.cdn.sos.ca.gov/2014/general/en/pdf/complete-vigr1.pdf> [as of Sep. 23, 2015].) Proposition 47 requires misdemeanor sentences for various drug possession and property offenses, unless the perpetrator has a prior conviction for a particularly heinous offense or for an offense requiring sex offender registration pursuant to section 290, subdivision (c). (Health & Saf. Code, §§ 11350, subd. (a), 11357, subd. (a), 11377, subd. (a); Pen. Code,

---

4     Jackson has requested we take judicial notice of Proposition 47 and the accompanying ballot materials, and we grant that request.

§§ 459.5, subd. (a), 473, 476a, subd. (b), 490.2, subd. (a), 496, subd. (a), 666, subd. (b).) Section 1170.18 renders ineligible for resentencing only an inmate whose current offense would now be a misdemeanor, but who has a prior conviction for a particularly heinous offense or for an offense requiring sex offender registration pursuant to section 290, subdivision (c). (§ 1170.18, subds. (a), (i).)

Nowhere in the ballot materials for Proposition 47 were voters given any indication that initiative, which dealt with offenders whose current convictions would now be *misdemeanors* rather than felonies, had any impact on the TSRA, which dealt with offenders whose current convictions *would still be felonies*. For instance, the official title and summary stated, in pertinent part, that Proposition 47 would "[r]equire[] resentencing for persons serving felony sentences for these offenses[, i.e., offenses that require misdemeanor sentences under the measure] unless court finds unreasonable public safety risk." (Pamphlet, *supra,* official title and summary of Prop. 47, p. 34.) In explaining what Proposition 47 would do, the Legislative Analyst stated: "This measure reduces penalties for certain offenders convicted of *nonserious and nonviolent property and drug crimes. This measure also allows certain offenders who have been previously convicted of such crimes* to apply for reduced sentences." (Pamphlet, *supra,* analysis of Prop. 47 by Legislative Analyst, p. 35, italics added.) With respect to the resentencing provision, the Legislative Analyst explained: "This measure allows offenders *currently serving felony sentences for the above crimes*[, i.e., grand theft, shoplifting, receiving stolen property, writing bad checks, check forgery, and drug possession] to apply to have their felony sentences reduced to misdemeanor sentences. In addition, certain offenders

14

who have already completed a sentence for a felony that the measure changes could apply to the court to have their felony conviction changed to a misdemeanor. However, no offender who has committed a specified severe crime could be resentenced or have their conviction changed. In addition, the measure states that a court is not required to resentence an offender currently serving a felony sentence if the court finds it likely that the offender will commit a specified severe crime. Offenders who are resentenced would be required to be on state parole for one year, unless the judge chooses to remove that requirement." (*Id.* at p. 36, italics added.)

Similarly, the arguments in favor of and against Proposition 47 spoke in terms solely of Proposition 47, and never mentioned the TSRA. The argument in favor of Proposition 47 spoke in terms of prioritizing serious and violent crime so as to stop wasting prison space "on petty crimes," stop "wasting money on warehousing people in prisons for nonviolent petty crimes," and stop California's overcrowded prisons from "incarcerating too many people convicted of low-level, nonviolent offenses." (Pamphlet, *supra,* argument in favor of Prop. 47, p. 38.) The rebuttal to argument against Proposition 47 reiterated these themes, and never suggested Proposition 47 would have any effect on resentencing under the TSRA. (See Pamphlet, *supra,* rebuttal to argument against Prop. 47, p. 39.) Although the rebuttal to argument in favor of Proposition 47 asserted 10,000 inmates would be eligible for early release under the measure, and that many of them had *prior* convictions "for serious crimes, such as assault, robbery and home burglary" (Pamphlet, *supra,* rebuttal to argument in favor of Prop. 47, p. 38), there is no suggestion the early release provisions would extend to inmates whose current

15

offenses remained felonies under the TSRA.  The same is true of the discussion of resentencing contained in the argument against Proposition 47.  (Pamphlet, *supra,* argument against Prop. 47, p. 39.)

Considering the foregoing, we cannot reasonably conclude voters intended the definition of " 'unreasonable risk of danger to public safety' " contained in section 1170.18, subdivision (c), to apply to that phrase as it appears in section 1170.126, subdivision (f), despite the former section's preamble, "As used throughout this Code. . . ."  Voters cannot intend something of which they are unaware.

Additionally, as a matter of statutory construction, we note the TSRA's sunset clause effectively precluded most new applications for relief under the TSRA after November 7, 2014 (see § 1170.126, subd. (b)), while Proposition 47 (and its newly enacted definitional provisions under § 1170.18, subd. (c)) took effect on November 5, 2014 (Cal. Const., art. II, § 10, subd. (a)), which would provide only a two-day window during which an applicant under the TSRA would reap the benefits of the more restrictive "dangerousness" definitions adopted by Proposition 47.  As an additional matter of statutory construction, we decline to ascribe to the electorate an intent to overlay a definitional amendment onto a remedial scheme that effectively expired two days after the definitional amendment would have taken effect.

Finally, and again as a matter of statutory construction, adopting Jackson's interpretation of the intended scope of section 1170.18, subdivision (c), would present serious questions under the equal protection clauses of the United States and California Constitutions.  Specifically, under Jackson's construction, the more restrictive

16

"dangerousness" definition adopted by Proposition 47 would apply only to applicants who invoked the TSRA during the two-day window when both were in effect or (assuming retroactivity) to a slightly larger class of applicants under the TSRA whose matters were not yet final before the effective date of Proposition 47. However, the more restrictive "dangerousness" definition adopted by Proposition 47 would provide no benefit to those applicants who, although identically situated to Jackson, had their TSRA applications denied, which denials became final before November 5, 2014. "Both the United States Supreme Court and the California courts have pointed out on numerous occasions that a court, when faced with an ambiguous statute that raises serious constitutional questions, should endeavor to construe the statute in a manner which *avoids* any doubt concerning its validity." (*Carlos v. Superior Court* (1983) 35 Cal.3d 131, 147, fn. omitted, overruled on other grounds in *People v. Anderson* (1987) 43 Cal.3d 1104, 1147.) Our construction of Proposition 47's provisions avoids potential equal protection infirmities of its provisions by limiting its application to applicants under Proposition 47's remedial scheme.

C. The Remaining Claims

Jackson finally argues (1) this court should apply the "substantial evidence" standard to reviewing a trial court's determination of dangerousness under the TSRA, and (2) this court should conclude there was no substantial evidence on which the court could reasonably conclude that he posed an unreasonable risk to public safety.

17

*The Standard of Review: Substantial Evidence or Abuse of Discretion?*

There is no definitive case law determining the appropriate standard of review to a trial court's determination of dangerousness under the TSRA.[5]  We therefore turn to the statutory scheme and analogous law to examine this issue.

Section 1170.126, subdivision (f), provides that a petitioner shall not be resentenced if "the court, *in its discretion,* determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety."  (Italics added.)  By its plain language, subdivision (f) of section 1170.126 leaves the determination of whether resentencing would present an unreasonable risk of danger to public safety to the *discretion* of the court.  This conclusion finds further support in subdivision (g) of this same statute, which provides in part that a court may consider various enumerated factors "[i]n exercising its *discretion* in subdivision (f)."  (Italics added.)  "Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.  [Citations.]' "  (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.)  This standard examines whether the ruling in question falls outside bounds of reason under applicable law and relevant facts.  (*People v. Williams* (1998) 17 Cal.4th 148, 162.)

---

5     In *People v. Payne* (2015) 232 Cal.App.4th 579, the court evaluated the appropriate standard of review under the TSRA.  However, the California Supreme Court has granted review in *Payne* (*People v. Payne, supra,* review granted March 25, 2015, S223856) and, pending direction from the Supreme Court, we must reach the issue here.

18

Under the clear language of section 1170.126, the ultimate determination that resentencing would pose an unreasonable risk of danger is vested in the trial court's discretion and we therefore review that determination for abuse of discretion. Of course, if there is no evidence in the record supporting the facts on which the court's discretion was exercised, the decision would constitute an abuse of discretion, and we therefore conclude the People have the burden of proving, by a preponderance of the evidence, the relevant facts and circumstances that animate the trial court's discretionary determination.

Such an interpretation is consistent with California's noncapital sentencing scheme. Under the determinate sentencing law (DSL) as it existed prior to *Cunningham v. California* (2007) 549 U.S. 270, "three terms of imprisonment [were] specified by statute for most offenses. The trial court's discretion in selecting among [those] options [was] limited by section 1170, subdivision (b), which direct [ed] that 'the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime.' " (*People v. Black* (2007) 41 Cal.4th 799, 808, fn. omitted.) Trial courts had discretion to impose the lower or upper term instead of the middle term of imprisonment, and generally were required by the statutes and sentencing rules to state reasons for their discretionary sentencing choices. (*Id*. at pp. 808-809.) Such reasons had to be "supported by a preponderance of the evidence in the record" and reasonably related to the particular sentencing determination. (*People v. Scott* (1994) 9 Cal.4th 331, 349.) Even after the DSL was reformed and amended in response to *Cunningham,* the courts still acknowledged that certain discretionary sentencing decisions could rely on facts established by a preponderance of the evidence. (See *In re Coley, supra,* 55 Cal.4th at

19

pp. 557-558.)  As our Supreme Court explained in *People v. Sandoval* (2007) 41 Cal.4th 825, 850-851, in making its discretionary sentencing choices post-*Cunningham,* "the trial court need only 'state [its] reasons' [citation]; it is not required to identify aggravating and mitigating factors, *apply a preponderance of the evidence standard,* or specify the 'ultimate facts' that 'justify[ ] the term selected.'  [Citations.]  Rather, the court must 'state in simple language the primary factor or factors that support the exercise of discretion.' " (Italics added.)

We believe a trial court's discretionary determination of dangerousness when considering a petition for resentencing under the TSRA is analogous to an evaluation of the relative weight of mitigating and aggravating circumstances and is "not equivalent to a factual finding." (*People v. Black, supra*, 41 Cal.4th at p. 814, fn. 4.)  Although the facts on which that discretion is exercised should be supported by a preponderance of the evidence, the court's ultimate determination is not subject to substantial evidence review, but must instead be upheld if it does not constitute an abuse of discretion.  That is, although the facts on which the court's finding of unreasonable risk is based must be supported by a preponderance of the evidence and are themselves subject to our review for substantial evidence (see, e.g., *People v. Cluff* (2001) 87 Cal.App.4th 991, 998 [trial court abuses its discretion when factual findings critical to decision find no support in record]), the determination of dangerousness remains a discretionary one and we will not disturb its ruling unless it "exceeds the bounds of reason, all of the circumstances before it being considered." (*People v. Santamaria* (1991) 229 Cal.App.3d 269, 277.)

*Application of the Standard to the Ruling Below*

Applying those tests here, the record contains substantial evidence of numerous facts the court was entitled to consider when making its discretionary determination.[6] Jackson had a lengthy prior record of offenses, as this court recognized in *People v. Jackson* (July 27, 2006, D047054) [nonpub. opn.] [2006 WL 2076035, at p. *3]:

> "As a juvenile, he was arrested three times for indecent exposure and was committed to the California Youth Authority for a 1976 incident involving auto theft, reckless driving, and assault with a deadly weapon on a police officer. Jackson's adult criminal history began in 1979 when he was convicted of residential burglary and sentenced to prison for two years. In 1981 he again committed burglary and was sentenced to prison for six years. In 1985 he was convicted of attempted burglary, five counts of burglary of inhabited dwellings, and assault with a deadly weapon. Jackson's assault charge stemmed from one of the 1985 residential burglaries after he struck a startled female resident in the face with a ceramic pitcher, causing an injury requiring plastic surgery. While serving a 25-year sentence for the 1985 crimes, he was arrested in prison for possessing a weapon and sentenced to prison for two additional years. After serving 15 years of his 27-year sentence, Jackson was paroled in 2000. He violated parole two times, first for fighting and making terrorist threats and then for indecent exposure. Jackson's 2003 indecent exposure conviction culminated in his return to prison until 2004 when he was discharged from parole. On February 24, 2005, he committed the current felony while on probation for the 2003 indecent exposure conviction."

---

6    When exercising its discretion, "the court may consider: [¶] (1) The [inmate's] criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The [inmate's] disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g).)

In addition to his record of violence, including a residential assault that severely injured the victim, his record demonstrated a marked inability to remain law-abiding during the brief periods when he was free from incarceration. Finally, his prison behavior included violations in which he used assaultive or aggressive behavior, the last of which occurred less than four years before he filed the present petition.

The court, after considering the somewhat favorable psychological evaluation of Jackson by Dr. Gothard, exercised its discretion under the TSRA not to grant Jackson's petition, reasoning he still presented "a continuing and unreasonable risk of danger to public safety." We cannot conclude that, on these facts, the discretionary decision to deny Jackson's petition fell outside the bounds of reason, all of the circumstances being considered.

## DISPOSITION

The order is affirmed.

McDONALD, J.

WE CONCUR:

McCONNELL, P. J.

NARES, J.

22